# EXHIBIT 1



Commercial Equipment Lease Agreement ("Lease")
Date as of: 09/12/2014
Contract No: 001-0065467-000
FCL Customer No:
Application No: 47879

Lessor: FARM CREDIT LEASING SERVICES CORPORATION ("LESSOR")
600 Highway 169 South., Suite 300
Minneapolis, MN 55426-1219

Lessee: GOOD FORAGE, LLC. ("LESSEE")
4788 Spinning Wheel Dr
Brighton CO 80601

| Equipment Information ||||||||
|---|---|---|---|---|---|---|---|
| | | | | Metered Units of Use ||||
| Qty | N/U | Equipment Description | Serial Number | At Delivery Date | "Max Annual Usage" | Usage Measure | "Excess Usage Rate" |
| 1 | N | 2014 MASSEY FERGUSON 2270 Baler: Square | M22700EHB04531 | N/A | N/A | N/A | N/A |

Equipment Location: 4788 Spinning Wheel Dr Brighton CO 80601

Minimum Liability Insurance Requirements: $300,000 general liability for non-titled equipment; $300,000 automobile liability for all titled vehicles 16,000# gross vehicle weight (GVW) and under, and $1,000,000 for all titled vehicles over 16,000# GVW.

Notice is hereby given that the rights, but not the obligations, of Farm Credit Leasing Services Corporation to purchase and/or sell the assets contained herein have been assigned to Farm Credit Leasing Exchange Inc. pursuant to an agreement between Farm Credit Leasing Services Corporation and Farm Credit Leasing Exchange Inc.

Lessee agrees that (i) Lessor may provide Lessee's information on a confidential basis to its third-party service provider, which is an institution of the Farm Credit System, (ii) such third-party service provider may provide the information on a confidential basis to other Farm Credit System institutions, or entities controlled or owned by Farm Credit System Institutions, and (iii) the information may be used by such recipients for credit analysis and administration purposes as well as for direct marketing purposes or for any lawful purpose.

| Term and Payment |||||||||
|---|---|---|---|---|---|---|---|---|
| Lease Term (Months) | Rental Period/ Frequency | Rental Payment* | Total Number of Rentals | Equipment Cost | Capitalized Tax | Total Equipment Cost | End of Term Type | End of Term Amount |
| 66 | Annual | Irregular | 6 | $119,000.00 | $0.00 | $119,000.00 | FPO/PRO | $47,600.00 |

* Excludes applicable sales and use tax

Irregular Rent Detail (Exclusive of applicable sales tax):

| Month/Year | Amount | # of Payments |
|---|---|---|
| 09/2014 | $19,004.30 | 1 |
| 09/2015 | $13,862.99 | 5 |

Completion Date: 10/05/2014

Lease Provisions (unless otherwise defined, capitalized terms shall have the meanings set forth above)

1. **Agreement to Lease.** Subject to the terms and conditions of this Lease, Lessor hereby agrees to lease to Lessee, and Lessee hereby agrees to lease from Lessor, the equipment listed above and in any schedule attached hereto or made a part thereof, together with all attachments, replacements, parts, additions, repairs and accessories and all additions to such equipment or affixed thereto (collectively, the "Equipment"). Lessor and Lessee agree that the Equipment is personal property regardless of its attachment to realty and that title to the Equipment shall at all times remain vested in Lessor.

2. **End of Lease.** Upon the expiration of the Lease Term, so long as all amounts due Lessor have been paid and no event of default has occurred and is continuing, Lessee shall have the option to, with no less than 90 days prior written notice to Lessor, purchase all but not less than all of the Equipment, AS-IS-WHERE-IS for a purchase price equal to the End of Term Amount specified above, plus all applicable taxes.

| Renewal Lease Term | Base Index | Projected Renewal Rental Amount* | Renewal Rental Payment Period | Total Number of Renewal Rentals |
|---|---|---|---|---|
| 12 | 90 Day FFCN | $4,187.25 | Monthly | 12 |

*Excludes applicable sales and use tax.

In the event Lessee does not exercise the option to purchase the Equipment in accordance with the terms and conditions set forth in this Paragraph 2, the Lease shall automatically, without further action on the part of the Lessor or Lessee, be renewed for an additional term as described above ("Renewal Lease Term") and projected rental amount, as described above ("Projected Renewal Rental Amount"), which amount shall be adjusted as provided herein. The Projected Renewal Rental Amount has been indexed to the financial instrument yield described above ("Base Index"). In the event such financial instrument yield determined as of ninety (90) days prior to the expiration of the initial Lease Term ("Actual Index") differs from the Base Index, the Projected Renewal Rental Amount shall be adjusted, upward or downward, based upon the difference between the Base Index and the Actual Index. Such adjusted amount shall be the "Renewal Rental Amount" for purposes of this Lease. In the

event such financial instrument yield cannot be determined for purposes of calculating the Renewal Rental Amount, the Base Index and the Actual Index shall be the yield on a United States Treasury issued note of like or comparable duration as the financial instrument described as part of the Base Index above.

The first Renewal Rental Amount shall be due and payable by Lessee on the day of the initial Lease Term expiration and shall continue to be paid on the same day of the first month of each subsequent Renewal Rental Payment Period (or the same day of each subsequent month in the case of a monthly Renewal Rental Payment Period) until the Total Number of Renewal Rentals provided above have been paid.

Upon expiration of the Renewal Lease Term, Lessee shall return the Equipment to Lessor in accordance with the terms of the Lease applicable to the Equipment, or so long as all amounts due Lessor have been paid, no event of default has occurred and is continuing, and Lessee shall have given Lessor written notice at least one hundred eighty (180) days prior to the expiration of the Renewal Lease Term, Lessee may purchase all, but not less than all, of the Equipment, AS-IS-WHERE-IS, for an amount equal to its then fair market value plus all applicable taxes.

In the event that, at the expiration of the Renewal Lease Term, Lessee has not purchased or returned the Equipment, Lessor shall be entitled to monthly hold-over rentals each in an amount equal to the Renewal Rental Amount (pro-rated to a monthly amount in the case of a quarterly, semi-annual, annual or other Renewal Rental Payment Period). The preceding sentence shall not in any way limit Lessor's right to exercise any default rights and remedies as applicable.

3. **Equipment Delivery, Installation, and Acceptance.** Lessee shall arrange with the applicable vendor ("Vendor") for the delivery and installation of the Equipment at the Equipment Location, specified above. Lessor shall not be liable to Lessee with respect to any delay in or failure of delivery of the Equipment. The "Lease Commencement Date" for the Equipment shall be the date the Equipment is delivered and accepted, as confirmed by Lessee below. Lessee represents and warrants that as of such date, the Equipment has been delivered to Lessee, Lessee has unconditionally accepted the Equipment and Lessee agrees that the Equipment is subject to this Lease. Lessee authorizes Lessor to pay the Total Equipment Cost as set forth above directly to the Vendor of the Equipment to the extent of the unpaid balance of the purchase price. Lessee agrees that if all of the items of Equipment have not been delivered and accepted hereunder on or before the Completion Date set forth above, Lessor shall have no obligation to lease the Equipment to Lessee, and Lessee shall purchase from Lessor the items of Equipment then subject to this Lease within five days after Lessor's demand for a price equal to Lessor's cost of such items plus a finance cost of $250 plus any applicable sales and use tax on such sale.

4. **Term, Rent, and Late Charge.** This Lease shall be effective on the date it is accepted in writing by Lessor. The Lease Term shall begin on the Lease Commencement Date. Lessee shall pay rent as specified above, with the first Rental Payment being due on the Lease Commencement Date for the first Rental Period. Each subsequent Rental Payment shall be due on the same date of the first month of each following Rental Period, provided, however, that Lessee at its option may specify another day of such month for subsequent Rental Payment (but without changing the expiration of the Lease Term), in which case Lessor shall adjust subsequent Rental Payment amounts up or down to maintain the same total return to Lessor over the Lease Term. If any payment, whether for rent or otherwise, is not paid when due, Lessor may impose a late charge of 1.5% per month of the amount past due (or the maximum amount permitted by law, if less).

5. **Net Lease.** This Lease is a net lease and may not be cancelled or terminated except as provided herein. Lessee's obligation to perform its obligations and pay all rent and other amounts required to be paid by Lessee hereunder, without notice of demand from Lessor, shall be absolute and unconditional and shall not be subject to any abatement, reduction, set-off, defense, counterclaim for any reason whatsoever, including without limitation any failure of the Equipment or any misrepresentation, breach of warranty, neglect, or failure by Vendor or its representatives, and Lessee shall make no claim on account thereof against Lessor and shall, nevertheless, pay rent and otherwise perform all Lessee's obligations hereunder.

6. **Use, Maintenance and Return of Equipment; Subletting and Assignment Prohibited.** Lessee agrees that the Equipment will only be used in the Lessee's trade or business for legal business and commercial purposes. Without Lessor's prior written consent, Lessee shall not (a) sublet the Equipment, (b) assign, transfer or otherwise dispose of this Lease, any Equipment or any interest therein, or create or suffer any levy, lien or encumbrances thereon other than any lien or encumbrances created by Lessor, or (c) remove the Equipment from the Equipment Location specified above. The Equipment will be operated by competent and qualified personnel only and in accordance with applicable operating instructions, laws, government regulations and applicable insurance policies. Lessee shall make the Equipment available for inspection by Lessor's representatives during Lessee's normal business hours. Lessee, at its expense, shall keep the Equipment in good repair, condition and working order, in full compliance with all applicable manufacturers' recommendations, ordinary wear and tear excepted subject to the limitations provided herein, and Lessee shall not misuse or abuse the Equipment. Upon the expiration of the Lease Term or any Renewal Term if Lessee does not exercise any purchase option provided in this Lease, or upon demand by Lessor pursuant to Paragraph 13, Lessee, unless otherwise directed, shall: (i) immediately crate, insure and ship the Equipment to such location as Lessor may specify at Lessee's expense; (ii) return all applicable manuals and maintenance records to Lessor; and (iii) pay to Lessor immediately upon demand all charges incurred by Lessor to repair any excessive wear and tear and for any usage in excess of the Maximum Annual Usage at the Excess Usage Rate specified herein. Equipment returned to Lessor shall be in the following condition upon delivery to Lessor: (i) All components, accessories and features furnished with the Equipment will be complete and operational within the manufacturers rated specifications as originally delivered; (ii) the Equipment shall be free of rust and corrosion, washed, cleaned and/or steam cleaned, where applicable; (iii) each item of Equipment will be in compliance with all applicable safety standards and regulations; and (iv) each item of Equipment returned to Lessor shall not have costs to repair in excess of $250.00. Excessive wear and tear shall include, but not be limited to, wear of any component in excess of 50 percent of the component's useful life, broken glass, fluid leaks, and cracks, holes, gouges, bends and impact damage in the Equipment or any component therein, whether mechanical or appearance, internal or external.

7. **Risk of Use, Damage and Destruction.** Lessee assumes all risk arising from the possession and operation of the Equipment. Lessee hereby agrees to indemnify and hold Lessor harmless from and against any and all claims, losses, liabilities (including negligence, tort and strict liability), damages, judgments, suits and all legal proceedings, and any and all costs and expenses in connection therewith (including attorneys' fees) arising out of or in any manner connected with the manufacture, purchase, ownership, delivery, rejection, non-delivery, transportation, possession, use, storage, operation, condition, maintenance, repair, return, or other disposition of the Equipment or with this Lease, including without limitation, claims for injury to or death of persons and for damage to property, and give Lessor prompt notice of any such claim or liability. No loss or damage to the Equipment shall relieve the Lessee of its obligations hereunder. The provisions of this Paragraph 7 shall survive expiration or termination of this Lease. In the event the Equipment is irreparably damaged, lost, stolen, or destroyed, Lessee will notify Lessor within three days of the event. Lessee will provide Lessor evidence of such loss and pay Lessor the Casualty Loss Value within thirty days of the loss. The Casualty Loss Value shall be an amount equal to the sum of: (i) any accrued and unpaid rentals up to the date Lessor receives Lessee's Casualty Loss Value payment; plus (ii) any late charges, use tax, property tax, or any other charges, fees or taxes due or that may be come due in accordance with this lease; plus (iii) the present value of all future rentals reserved in the Lease discounted at a rate equal to the rate of return which the Lessor would have realized had the Lease of the Equipment been in effect for the entire Lease Term; plus (iv) the present value of the anticipated residual value of the Equipment at the expiration of the Lease discounted at a rate equal to the rate of return which Lessor would have realized had this Lease been in effect for the entire Lease Term. Upon Lessor's receipt of such payment, Lessee shall be entitled to retain possession of the affected items of Equipment and the Lease will terminate with respect to such Equipment. In the event that the Lease contains more than a single item of Equipment, the Rental Payments due hereunder on the remaining Equipment following the termination shall be reduced pro-rata on the basis of relative Equipment Cost.

8. **Insurance.** Lessee shall at its own expense obtain and maintain during the term hereof, on or with respect to the Equipment (a) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the full replacement value of the Equipment and (b) liability insurance against liability for bodily injury and property damage in the amount shown above. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of a policy or policies to Lessee in at least the minimum amounts specified by Lessor naming Lessor as an additional insured thereunder for the liability coverage and as loss payee for the property damage coverage and, shall indicate that such insurance cannot be cancelled, or altered without at least 30 days prior written notice to Lessor. Each such policy shall be in such form and with such insurers as may be satisfactory to Lessor. If Lessee fails to pay insurance required to be provided by Lessee under this Lease, Lessor may, but is not obligated to provide such insurance. Lessee shall, upon demand reimburse Lessor for any costs, fees, or expenses incurred in providing such insurance. Payments for any loss or damage to the Equipment shall be by check or draft payable to Lessor. Lessor may endorse Lessee's name thereon as Lessee's agent.

9. **Warranties.** Lessee agrees that it has selected the Equipment and Vendor based upon its own judgment and disclaims any reliance upon any statements or representations made by Lessor. LESSEE ACKNOWLEDGES THAT: LESSOR IS NOT THE MANUFACTURER OF THE EQUIPMENT NOR THE MANUFACTURER'S AGENT NOR A DEALER THEREIN; THE EQUIPMENT IS OF SIZE, DESIGN, CAPACITY, DESCRIPTION, AND MANUFACTURE

SELECTED BY LESSEE; LESSEE IS SATISFIED THAT THE EQUIPMENT IS SUITABLE AND FIT FOR ITS PURPOSES; LESSOR HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY EITHER EXPRESS OR IMPLIED AND HAS NOT WARRANTED THE MERCHANTABILITY OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; AND LESSEE LEASES THE EQUIPMENT AND TAKES SUCH "AS IS" AND WITH ALL FAULTS. Lessor hereby assigns to Lessee, for the duration hereof, all warranties received by Lessor with respect to the Equipment to the extent assignable and Lessor shall have no obligation whatsoever to make any claim on such warranty.

10. **UCC Filings; Article 2A Provisions; Finance Lease Status.** To the extent that the Lease should be construed as a lease intended as security, or otherwise, Lessee hereby grants Lessor a security interest in the Equipment and all proceeds thereof (including insurance proceeds) to secure all amounts due hereunder. Lessee also authorizes Lessor to file any Uniform Commercial Code ("UCC") financing statements without Lessee's authentication to perfect the foregoing security interest. The Lessee agrees that if Article 2A of the UCC applies to this Lease, this Lease will be considered a "Finance Lease" as that term is defined in Article 2A.

11. **Insertion and Correction of Information; Modification, Waiver, Etc.** Lessee authorizes Lessor to correct the Equipment Cost if the actual cost of the Equipment is more or less than the Total Equipment Cost shown on the first page of this Lease and adjust the Rental Payment (as well as the End of Term Amount and any other amount affected by the change in Equipment Cost) up or down to provide the same yield to the Lessor as would have been obtained if the actual cost had been the same as the Total Equipment Cost. Adjustments of 10% or less may be made by written notice from Lessor to Lessee. Adjustments of more than 10% shall be made by execution of an amendment to this Lease reflecting the applicable changes. Lessee further authorizes Lessor to (a) insert in this Lease the serial number, and/or model numbers of the Equipment if unknown at the time this Lease is executed, correct any errors in such numbers reflected in this Lease at the time this Lease is executed; (b) correct any other errors in the description of the Equipment reflected in this Lease at the time this Lease is executed; (c) fill in blanks existing in this Lease at the time of Lease is executed; and (d) correct any patent errors in this Lease.

12. **Default; No Waiver.** The Lessee shall be in default hereunder upon the occurrence of one or more of the following events: (a) Lessee fails to pay when due any rent or other amount required to be paid by Lessee hereunder or fails to maintain any insurance required hereunder; (b) Lessee fails to perform any other provisions hereunder or violates any of the covenants or representations made by Lessee herein and such failure or breach shall continue unremedied for a period of 10 days after written notice to Lessee; (c) Lessee shall be in default under any other agreement between Lessor and Lessee or under any material obligation to a third party for borrowed money or deferred purchase price of property; (d) the condition of Lessee's affairs shall so change as to, in Lessor's judgment, materially increase the credit risk involved; (e) without Lessor's prior written consent Lessee (i) changes its name, jurisdiction of organization, or organizational structure, (ii) merges or consolidates with any other organization, (iii) terminates its existence, or (iv) conveys or leases substantially all of its assets to any person; (f) makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for Lessee or for a substantial part of Lessee's property; (g) a petition is filed by or against Lessee or any guarantor under Title 11 of the United States Code or any other Federal or State bankruptcy or in solvency law; or any guarantor shall be in default under the terms of the applicable guaranty. Any failure of Lessor to require strict performance by Lessee or any waiver by Lessor of any provision in the Lease shall not be construed as a consent or waiver of any other breach of the same or any other provision.

13. **Remedies.** If the Lessee is in default hereunder, Lessor shall have the right, in its sole discretion, to exercise any one or more of the following remedies: (a) cancel the Lease with respect to any or all items of Equipment, or terminate Lessee's right to possession of the Equipment without terminating this Lease; (b) repossess the Equipment without demand or notice, and without court order or legal proceeding, and sell or lease the Equipment or otherwise dispose, hold or use such Equipment at Lessor's discretion; (c) recover from Lessee all rent and other amounts then due and to become due hereunder; (d) recover from Lessee all of Lessor's costs and expenses (including legal expenses and attorneys' fees) in enforcing this Lease; (e) avail itself to any other remedy available at law or in equity, including but not limited to seeking damages, specific performance or an injunction; and (f) recover from Lessee as liquidated damages an amount equal to the sum of: (i) any accrued and unpaid rentals as of the date the Lessor obtains possession of the Equipment following Lessee's default ("Repossession Date"); plus (ii) the present value of all future rentals reserved in the Lease and contracted to be paid over the unexpired term of the Lease and the present value of the anticipated residual value of the Equipment at the expiration of the Lease, discounted at a rate equal to the six (6) month U.S. Treasury Bill rate as of the Repossession Date; plus (iii) all costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale, re-lease, or other disposition of the Equipment including reasonable attorney's fees resulting from the Lessee's default; less (iv) the amount received by Lessor upon sale or re-lease of the Equipment, if any. In the event that it is determined after a default that Lessor is entitled to the present value of any damages owed to Lessor, the discount rate shall be equal to the six (6) month U.S. Treasury Bill rate as of the Repossession Date. Lessor's rights and remedies hereunder or by law shall be cumulative and in addition to all other rights and remedies available to Lessor. Lessor's failure to strictly enforce any provisions of this Lease or any other right available to Lessor shall not be construed as a waiver thereof or as excusing Lessee from future performance.

14. **Taxes.** Lessee shall pay when due, be responsible for and reimburse Lessor for all charges, taxes, fees and assessments (hereafter "Taxes") imposed, levied or assessed by any governmental body, authority, or agency (hereafter "Tax Jurisdiction"), required to be paid or collected by Lessor, on or relating to the Equipment leased hereunder and the sale, purchase, rental, operation, maintenance or use thereof (excluding any taxes on or measured by the net income or capital of Lessor) together with any penalties or interest applicable thereto, whether the same be payable by or assessed to Lessee or Lessor. Lessor shall report any and all necessary information for assessment of the Equipment regarding Taxes to the Tax Jurisdiction(s) relevant to the address specified in this Lease, or any other address of which Lessee has notified Lessor in writing. Lessor is under no obligation to notify Lessee of, defend against, nor contest any assessment imposed by any Tax Jurisdiction(s) with assessment authority under its governing law. Lessee shall also reimburse Lessor any costs and expenses incurred by Lessor (including reasonable attorneys' fees), as a result of Lessee's failure to reimburse Lessor for such Taxes. Lessee will also reimburse Lessor for any reasonable costs incurred for the accurate assessment of the Equipment; however the Lessor is not obligated under this Lease Agreement to take any action on either the Lessee's or Lessor's behalf. The provisions of this Paragraph shall survive the expiration or termination of this Lease.

15. **Lessee's Representations and Warranties; Financial Reporting.** Lessee hereby represents and warrants that, effective on the date on which Lessee executes this Lease: (a) if Lessee is a partnership, corporation, limited liability company or other legal entity, the execution and delivery of this Lease and the performance of Lessee's obligations hereunder have been duly authorized by all necessary action on the part of the Lessee; (b) the person signing the Lease on behalf of Lessee is duly authorized; (c) all information provided by Lessee to Lessor in connection with this Lease is true and correct in all material respects; and (d) this Lease constitutes a legal, valid and binding obligation of the Lessee, enforceable against Lessee in accordance with its terms. Upon request, Lessee agrees to promptly furnish Lessor with Lessee's annual certified financial statements, in form, substance, and detail reasonably satisfactory to Lessor. Lessee further agrees to furnish Lessor with other financial information as Lessor may reasonably request. If Lessee does not have certified financial statements available in the normal course of business, Lessee shall provide Lessor with annual uncertified financial statements that accurately reflect Lessee's financial condition, in form, substance,and detail reasonably satisfactory to Lessor and including copies of Lessee's most recent federal income tax returns.

16. **Miscellaneous.** This Lease, together with any schedules, exhibits, and addenda hereto, constitutes the entire agreement between Lessor and Lessee and may be modified only by a written instrument signed by Lessor and Lessee. The headings in this Lease have been included for ease of reference only and shall not be considered in the construction or interpretation of this Lease. In the event there is more than one Lessee named in this Lease, the obligations of each shall be joint and several. This Lease shall be interpreted, construed and enforced in accordance with the laws of the State of Minnesota. No Vendor or agent thereof is authorized to bind Lessor or waive or modify any term hereof. If any provision of this Lease shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. Lessor shall have the right to sell or assign its interest or grant a security interest in its interest in this Lease and the Equipment. (Lessee agrees Lessor may provide Lessee's information to its third party service provider and said third party service provider may use the information for any purpose.) LESSEE HEREBY WAIVES ANY RIGHT TO A JURY TRIAL WITH RESPECT TO ANY MANNER UNDER OR IN CONNECTION WITH THIS LEASE. TIME IS OF THE ESSENCE WITH RESPECT TO THE OBLIGATIONS OF LESSEE UNDER THIS LEASE.

17. [Reserved.]

18. **Tax Indemnification.** Lessee represents and warrants that; (a) Lessee has not claimed and will not claim any tax credit, cost recovery, depreciation or other similar tax benefits with respect to the Equipment; (b) Lessee has no right, title or interest in or to the Equipment, except that given herein; (c) Lessee will not use the Equipment outside of the United States, (d) Lessee will take all actions necessary, including actions requested by Lessor from time to time, to perfect the tax ownership

in the equipment; and (e) Lessee will not commit an act that would impair Lessor's right to claim all or any portion of any tax benefits in regard to the equipment. The Lease has been entered into on the basis that Lessor as owner of the Equipment, shall be entitled to such deductions, credits and other benefits as are provided by Federal and state income tax laws and the regulations thereunder to an owner of property (the "Benefits"), including without limitation any tax credit, deductions for accelerated cost recovery and depreciation with respect to the Equipment. If Lessor or any assignee shall lose any Benefits or there shall be disallowed or recaptured any portion of the Benefits with respect to the Equipment as a result of any acts or omissions by Lessee, the inaccuracy of any certificate, representation or warranty of Lessee hereunder, Lessee shall indemnify Lessor by payment of an amount necessary, after deduction of all taxes required to be paid by Lessor with respect to the receipt thereof under the laws of any Federal, state or local government or taxing authority, to permit Lessor to recover (on an after-tax-basis over the full term of the Lease) the same return that Lessor would have realized had there not been a loss or disallowance of such Benefits, together with the amount of any interest or penalties which may be assessed by the government authorities with respect to such loss or disallowance, payable at Lessor's election, either as (a) supplemental rent to Lessor during the remaining period of the Lease Term, or (b) a lump sum, payable on demand to Lessor.

19. [Reserved.]
20. [Reserved.]
21. [Reserved.]
22. [Reserved.]
23. [Reserved.]

Agreed and Accepted

Lessor: FARM CREDIT LEASING SERVICES CORPORATION

By: _____  Amy L. Wong  Supervisor, Leasing Delivery Services
   *Signature*                *Name*        *Title*

Lessee(s): GOOD FORAGE, LLC.

_____  Clayton A Good  Member
   *Signature*              *Name*          *Title*

---

### ***LESSEE TO SIGN AND DATE WHEN THE EQUIPMENT IS DELIVERED.***

Lessee hereby certifies that the Equipment described above was delivered to and received by the Lessee on the date below, and is accepted for all purposes under this Lease.

Date Equipment Delivered ("Lease Commencement Date"): 9/19/14

Lessee(s): GOOD FORAGE, LLC.

_____  Clayton A Good  Member
   *Signature*              *Name*          *Title*

---

**Guaranty.** The undersigned Guarantor(s), in order to induce Lessor to enter into this Lease, do hereby jointly and severally guaranty payment when due of all rentals and other amounts payable under this Lease, as well as the prompt performance by Lessee of all other obligations under this Lease. This guaranty is absolute and unconditional, and Lessor may, without the consent of or notice to Guarantor(s), modify, amend, extend, or otherwise alter the terms of this Lease, release any collateral security for this Lease, or release any obligated party from liability, all without in any way affecting or diminishing the obligations of the Guarantor(s) under this Guaranty. Lessor shall not be required to notify Guarantor(s) of any default under the Lease, nor shall Lessor be required to take any action or pursue any remedies against Lessee before requiring payment under this Guaranty.

Guarantor: Clayton A Good

_____  Clayton Good  _____  9/19/14
   *Signature*              *Name*       Individual        *Date*
                                         *Title (omit if personal guarantor)*

Guarantor: Arnold Robert Good

_____  ARNOLD Good  _____  9/17/14
   *Signature*              *Name*       Individual        *Date*
                                         *Title (omit if personal guarantor)*