# EXHIBIT 6

**AMERICAN AGCREDIT**

1665 Utica Ave S, Suite 400
Minneapolis, MN 55416

## Schedule A

Contract Number: 001-0101083-000
Customer Number:

**Dated as of:  January 24, 2019**

**Lessee:**  **GOOD FORAGE, LLC.** ("LESSEE")
25605 County Road 62 1/2
GREELEY, CO 80631-9675

**This Schedule A, when executed by both Lessee and Lessor** shall be made a part of that Lease Agreement dated as of March 05, 2015 ("Lease"), between Lessee and Lessor.

In addition to authorities granted to Lessor under the Lease, Lessee further authorizes Lessor, as Lessee's attorney-in-fact, to correct any manifest errors in any of the information set forth on Page 1 of this Schedule A or any attachment thereto, including without limitation any amounts, percentages, options, terms, dates, and locations (collectively the "Information") as well as to make any other modifications to the Information resulting from changed circumstances occurring after the date hereof, provided, however, that Lessor shall give Lessee prompt written notice of any such modifications. Unless Lessee objects in writing within 5 business days after receipt of such notice, such modifications shall be deemed to be accepted and agreed by, and binding upon, Lessee.

### EQUIPMENT AND LOCATIONS

| # | New/Used | Qty | Equipment Description | Serial Number | Equipment Location | Equipment Cost | Tax |
|---|---|---|---|---|---|---|---|
| 1 | Used | 1 | 2014  STINGER  6500  Stacker | 702 | 25605 County Road 62 1/2<br>Greeley, CO 80631<br>WELD County | $190,000.00 | |
| | | | | | Totals | $190,000.00 | $0.00 |
| | | | | | Total Equipment Cost | $190,000.00 | |

### METERED USAGE

| # | At Delivery Date | "Max Annual Usage" | "Usage Measure" | "Excess Usage Rate" |
|---|---|---|---|---|
| 1 | 2550 | N/A | Engine Hours | N/A |

### LEASE PRICING

| Security Deposit | Scheduled Lease Term | Minimum Lease Term | Lease Rate Factor | Rental Amount *<br>(Exclusive of applicable taxes) | Rentals | Rental Frequency | Total Number of Rentals |
|---|---|---|---|---|---|---|---|
| $0.00 | 60  Months | N/A | 0.191268 | $36,340.88 | In Advance | Annual | 5 |

**Daily Billing Option?** Yes                    **Floating Rate:** No

| Vendor Deposit: | $40,000.00 | | |
|---|---|---|---|
| End of Term Type: | FPO/PRO | **FMV Cap %:** | N/A |

Lessee agrees that (i) Lessor may provide Lessee's information on a confidential basis to its third-party service provider, which is an institution of the Farm Credit System, (ii) such third-party service provider may provide the information on a confidential basis to other Farm Credit System institutions, or entities controlled or owned by Farm Credit System Institutions, and (iii) the information may be used by such recipients for credit analysis and administration purposes as well as for direct marketing purposes or for any lawful purpose.

This Schedule A may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page of this Schedule A by facsimile or email shall be as effective as delivery of a manually executed counterpart of this Schedule A.

### ADDITIONAL TERMS AND CONDITIONS

**End-of Term Options:**

## 1. FPO/PRO

Paragraph 23 of the Lease, as applicable to this Schedule A, is hereby amended to read in its entirety as follows:

23.Lessees Options

**Purchase or Renew Only (FPO/PRO)**

| Purchase Amount | Renewal Lease Term | Base Index | Projected Renewal Rental Amount* | Renewal Rental Payment Frequency | Total Number of Renewal Rentals |
|---|---|---|---|---|---|
| $38,000.00 | 12 | 90 DAY FFCN | $2,601.18 | Monthly | 12 |

*Exclusive of applicable tax on rentals

So long as all amounts due Lessor have been paid and no Event of Default has occurred and is continuing, at the expiration of the Scheduled Lease Term Lessee shall have the option to purchase the Equipment, AS-IS-WHERE-IS for a purchase price equal to Purchase Amount described above.

Lessee's right to exercise said option is conditioned upon: (a) Lessee having fully performed all of the terms and conditions of the Lease and all other agreements between Lessor and Lessee, at the time and in the manner required therein; (b) Lessor having received written notice of Lessee's election to exercise said option at least ninety (90) days prior to the expiration of the Scheduled Lease Term applicable to the Equipment; and (c) Lessee's payment to Lessor of said purchase price, together with all taxes applicable to the sale of the Equipment. In the event Lessee does not exercise the option to purchase the Equipment in accordance with the terms and conditions set forth in this Paragraph 23, the Lease shall automatically, without further action on the part of the Lessor or Lessee, be renewed for an additional term, as described above ("Renewal Lease Term") and projected rental amount as described above ("Projected Renewal Rental Amount"), which such amount shall be adjusted as provided herein. The Projected Renewal Rental Amount has been indexed to the financial instrument yield described above ("Base Index"). In the event such financial instrument yield determined as of ninety (90) days prior to the expiration of the Scheduled Lease Term ("Actual Index") differs from the Base Index, the Projected Renewal Rental Amount shall be adjusted, upward or downward, based upon the difference between the Base Index and the Actual Index. Such adjusted amount shall be the "Renewal Rental Amount" for purpose of this Lease. In the event such financial instrument yield cannot be determined for purposes of calculating the Renewal Rental Amount, the Base Index and the Actual Index shall be the yield on a United States Treasury issued note of like or comparable duration as the financial instrument described as part of the Base Index above.

The first Renewal Rental Amount shall be due and payable by Lessee on the first day of the month following the expiration of the Scheduled Lease Term and shall continue to be paid on the Renewal Rental Payment Frequency described above until the Total Number of Renewal Rentals provided herein have been paid.

Upon expiration of the Renewal Lease Term, Lessee shall return the Equipment to Lessor in accordance with the terms of the Lease applicable to the Equipment, or so long as all amounts due Lessor have been paid, no Event of Default has occurred and is continuing, and if Lessee shall have given Lessor written notice at least one hundred eighty (180) days prior to the expiration of the Renewal Lease Term, Lessee may purchase the Equipment, AS-IS-WHERE -IS, for an amount equal to its then fair market value.

As used in this Paragraph 23, Equipment shall mean all, but not less than all, of the Equipment.

**Maintenance/Use, Return, Holdover Rent:**

## 2. Mobile Non Transportation

(1) Maintenance and Use

The Equipment will at all times be operated and maintained by competent and qualified personnel only and in accordance with (i) applicable operating instructions, (ii) federal, state, and local laws and regulations (including but not limited to all safety standards and regulations of the Occupational Health and Safety Administration (OSHA) and the United States Department of Transportation ("DOT")), and (iii) applicable insurance policies. Lessee shall make the Equipment available for inspection by Lessor's representatives during Lessee's normal business hours. In addition to any specific requirements set forth herein, Lessee, at its own expense, shall at all times keep the Equipment washed, cleaned (including steam cleaned if appropriate) and free of rust and corrosion, ordinary wear and tear excepted, and shall be maintained in good general repair, working order, and warrantable condition, in full compliance with all applicable manufacturers' recommendations, and shall meet all manufacturer specifications and rated capacities ("Good Condition"). Lessee shall not misuse or abuse the Equipment. For purposes hereof, (i) all components, accessories and features furnished with the Equipment or Lessee installed shall constitute part of the Equipment, (ii) references to "ordinary wear and tear" shall under no circumstances include wear of any component in excess of 50% of its useful life, broken glass, fluid leaks, cracks, holes, gouges, bends, or impact damage, whether internal or external, unusual soiling or spotting or holes in interior fabrics or headliners or elsewhere, including those resulting from auxiliary equipment installation, and (iii) rust and corrosion shall be deemed present if (a) any painted surface contains any rust or corrosion: (b) any machined surface contains rust or corrosion; (c) more than 10 percent of the non-machined surfaces contains more than light surface rust or corrosion; or (d) any surface contains pitting or flaking of the material.

(2) Return of Equipment

In connection with any return of the Equipment (whether as a result of Lessor's exercise of its default rights and remedies or in connection with the option, if any, of Lessee to return the Equipment at the expiration or other termination of the Lease), the following shall apply:

(a) General

Without limiting the more specific requirements set forth below, returned Equipment shall be in Good Condition as defined above.

(b) Mechanical

(i) Internal combustion engines shall operate at rated horsepower, crankcase and manifold pressure, oil pressure, and fuel delivery with at least fifty percent (50%) remaining life before the next recommended overhaul or replacement (with determination of satisfaction of this requirement, if necessary at Lessor's discretion, to be made by subjecting the engine to manifold pressure, oil analysis, blow-by, turbo boost pressure and exhaust back pressure tests that show wear does not exceed the manufacturer's then current standards and with all tests to be performed by a factory authorized service center, at Lessee's expense, and in accordance with the manufacturer's then recommended standards and procedures);

(ii) Radiator and cooling system shall be capable of maintaining the Equipment at normal operating temperature as specified by manufacturer for anticipated conditions;

(iii) Drive components, motors, clutch transmission, and drive axles shall not slip, or grab, and shall operate quietly without vibration;

(iv) Brake drums and/or discs and friction surfaces shall not be cracked and shall have at least fifty percent (50%) usable remaining wear;

(v) For Equipment with chemical application systems, all operating components for such systems, including but not limited to hoppers, tanks, booms, pumps, and nozzles should be complete and in field ready condition, and booms shall be straight without damage;

(vi) If the Equipment is equipped with a blade, bucket or other attachments, the attachments shall have no broken or cracked teeth or cutting edges;

(vii) Wear items such as bearings, pins, and bushings shall be within manufacturer's recommended tolerances;

(viii) The frame, major components, and accessories shall be structurally sound without breaks, cracks or bends;

(ix) Any item of Equipment powered by electric motors shall have a battery installed that is sound and able to hold a charge at rated capacity for single shift operation;

(x) Undercarriage shall meet the following requirements: (i) track tension shall be properly adjusted to manufacturer's specifications,, (ii) track shoes and fasteners will not contain any cracks or breaks, and (iii) all components of the undercarriage will be of the same original size, type, grade and manufacturer as installed at delivery to Lessee at lease commencement, and the undercarriage will have at least 50% of original life remaining on all parts; and

(xi) The Equipment shall be free of damage requiring straightening and refinishing or replacement, and also free of mismatched paint from any refinishing while the Equipment was on lease.

(c) Electrical

(i) For Equipment with electrical systems, the battery will accept and hold a charge, and all wire harnesses shall be properly routed, secured, clean, and free of cracks or breaks;

(ii) All motors, gauges, and indicators shall be intact and in operating condition; and

(iii) For Equipment with GPS and/or precision Ag System shall be complete (including, but not limited to the monitoring system, up-to-date software, all modules, cables and harnesses) and in good working order.

(d) Tires, Wheels, Tracks

(i) Tires and/or rubber tracks as equipped shall be same size, type, tread, grade, and manufacturer (or other manufacturer of similar quality) as originally supplied and have at least fifty percent (50%) of their usable life remaining. If any Item of Equipment is returned with tires or tracks with less than 50% of usable life remaining, an invoice will be sent for the difference. For example, tires with 40% usable life remaining would be billed 10% of the cost of new tires (50% - 40% = 10% multiplied by the retail cost of new tires);

(ii) There shall be no side wall damage that affects the integrity of any tire or any cuts or damage that affect the integrity of the tracks; and

(iii) There shall be no wheel damage that affects the integrity of any wheel.

(e) Exterior and Structural Condition

The Equipment shall have good clean overall appearance, and all decals or other Lessee installed identification and advertising markings which are not necessary for the operation, maintenance or repair of the Equipment shall be removed (not painted over) in a workmanlike manner without damage to the Equipment's finish.; and

(f) Inspection, Inventory, Demonstration, and Storage

(i) Lessee shall provide a detailed inventory of the Equipment and all components thereof being returned, including a listing of model and serial number of all components and attachments comprising the Equipment;

(ii) Lessee will provide personnel, power and other requirements necessary to demonstrate the Equipment under power

(iii) Lessee shall provide free, secure storage of the Equipment up to ninety (90) days following the expiration or other termination of the Lease; and

(iv) Lessee agrees to pay Lessor a $300 inspection fee for returned Equipment. Lessee agrees to pay Lessor additional $300 inspection fees for each subsequent re-inspection if the Equipment failed to meet the requirements as set forth herein.

(g) Excess Usage Charge

Lessee shall pay Lessor on demand for usage of any item of Equipment in excess of the Max Annual Usage, if any, stated above for such item of Equipment in an amount equal to the applicable number of excess Usage Measures multiplied by the applicable Excess Usage Rate, all as stated above for such item of Equipment.

(h) Meter

When applicable, if any item of Equipment equipped with a meter to measure usage is returned with such meter broken, missing, tampered with or that has been replaced, the Lessee with be charged $1500 plus the cost of repair and refurbishment as deem necessary by Lessor. In the event the hour meter fails, the replacement of that meter must be documented by the manufacturer or licensed dealer and copies provided to Lessor during the return process.

(i) Payment of Lessor's Costs

In addition to any specific charges stated above, if with respect to any Item of Equipment, Lessor, in its sole but reasonable discretion, determines that the existence of any of the conditions described above and determines that the aggregate cost to remedy such conditions equals or exceeds $250 (excluding any tire, track, wheel and usage costs due herein, which shall be due in addition to any amounts due under this section), Lessee shall be deemed to have failed to satisfy its obligations to return such Equipment in Good Condition and Lessee shall be required to pay Lessor an amount equal to 120% of any costs incurred by Lessor in excess of Two Hundred Fifty Dollars ($250.00) to repair, recondition, and/or restore returned Equipment to the foregoing requirements shall be paid to Lessor by Lessee immediately upon written demand by Lessor. Lessee's failure to remit to Lessor any payment required by this Addendum within 30 days of the invoice date shall constitute a default under the lease and shall entitle Lessor to pursue any and all rights and remedies available thereunder.

(j) Transportation

The Equipment will be transported in accordance with the manufacturer's recommendation and all applicable government laws, rules and restrictions. If shipment is delayed as a result of road or highway load limit restrictions applied by state or local governments Lessee shall provide free, secure storage until such restrictions are lifted and the Equipment can be transported.

(3) Holdover rent

In the event that, at the expiration of the initial Lease Term or, if applicable, any Renewal Term, Lessee has not purchased the Equipment or, if Lessee has the option to return the Equipment, has not so returned the Equipment, Lessor shall be entitled to monthly hold-over rentals each in an amount equal to 120% of the Rental Payment for the last Rental Period prior to such expiration (pro-rated to a monthly amount in the case of a quarterly, semi-annual, annual, or other Rental Period). The preceding sentence shall not in any way limit Lessor's right to exercise any default rights and remedies as applicable.

**Other Terms and Conditions:**

**3.  Daily Billing Option**

In the event that Lessee has a previous Schedule A under the Daily Billing Option, Lessee hereby requests Lessor to adjust the regular payment date for this Schedule A to match the regular payment date of the previous Schedule A as a convenience to Lessee. In such case, a full rental payment shall be due on the Scheduled Lease Commencement Date, followed by another full rental payment on such adjusted regular payment date (even though such adjusted regular payment date may be less than a full rental period after the Scheduled Lease Commencement Date). The resulting excess rental amount paid will be credited against the final rental payment. As compensation for Lessor's willingness to provide this accommodation to the Lessee, no interest will be paid on such excess rental amount.

**Lessor: FARM CREDIT LEASING SERVICES CORPORATION**

By: _____   Bob Bimson   Manager, Lease Operations
        Signature                                              Name                                  Title

**Lessee(s): GOOD FORAGE, LLC.**

_____   Clayton Good   Manager
        Signature                                              Name                                  Title

| Lessee Address | City, State, Zip | Contact | Phone |
|---|---|---|---|
| 25605 County Road 62 1/2 | GREELEY CO 80631-9675 | Clayton A Good | ███████ |