# EXHIBIT 8


**AMERICAN AGCREDIT**

1665 Utica Ave S, Suite 400
Minneapolis, MN 55416

**Schedule A**
Contract Number: 001-0106435-000
Customer Number: ▮▮▮▮

Dated as of: September 18, 2019

Lessee: **GOOD FORAGE, LLC.** ("LESSEE")
25605 County Road 62 1/2
GREELEY, CO 80631-9675

This Schedule A, when executed by both Lessee and Lessor shall be made a part of that Lease Agreement dated as of March 05, 2015 ("Lease"), between Lessee and Lessor.

In addition to authorities granted to Lessor under the Lease, Lessee further authorizes Lessor, as Lessee's attorney-in-fact, to correct any manifest errors in any of the information set forth on Page 1 of this Schedule A or any attachment thereto, including without limitation any amounts, percentages, options, terms, dates, and locations (collectively the "Information") as well as to make any other modifications to the Information resulting from changed circumstances occurring after the date hereof, provided, however, that Lessor shall give Lessee prompt written notice of any such modifications. Unless Lessee objects in writing within 5 business days after receipt of such notice, such modifications shall be deemed to be accepted and agreed by, and binding upon, Lessee.

## EQUIPMENT AND LOCATIONS

| # | New/Used | Qty | Equipment Description | Serial Number | Equipment Location | Equipment Cost | Tax |
|---|---|---|---|---|---|---|---|
| 1 | New | 1 | 2020 DOONAN 532DBBIDCIKQD Black Gold Drop Deck Trailer | 1D9BG532XL1609056 | 25605 County Road 62 1/2 Greeley, CO 80631-9675 WELD County | $39,600.00 | |
| | | | | | Totals | $39,600.00 | $0.00 |
| | | | | | Total Equipment Cost | $39,600.00 | |

## LEASE PRICING

| Security Deposit | Scheduled Lease Term | Minimum Lease Term | Lease Rate Factor | Rental Amount * (Exclusive of applicable taxes) | Rentals | Rental Frequency | Total Number of Rentals |
|---|---|---|---|---|---|---|---|
| $0.00 | 60 Months | N/A | 0.093432 | See Irregular Rent Detail below | In Advance | Irregular | 10 |

**Daily Billing Option?** Yes          **Floating Rate:** No

**Irregular Rent Detail** (Exclusive of applicable sales tax):

| Month/Year | Amount | # of Payments |
|---|---|---|
| September / 2019 | $5,403.48 | 1 |
| March / 2020 | $3,699.91 | 9 |

| | Trade In: | $6,032.26 | | |
|---|---|---|---|---|
| **End of Term Type:** | FPO/PRO | | **FMV Cap %:** | N/A |

Lessee agrees that (i) Lessor may provide Lessee's information on a confidential basis to its third-party service provider, which is an institution of the Farm Credit System, (ii) such third-party service provider may provide the information on a confidential basis to other Farm Credit System institutions, or entities controlled or owned by Farm Credit System Institutions, and (iii) the information may be used by such recipients for credit analysis and administration purposes as well as for direct marketing purposes or for any lawful purpose.

This Schedule A may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page of this Schedule A by facsimile or email shall be as effective as delivery of a manually executed counterpart of this Schedule A.

## ADDITIONAL TERMS AND CONDITIONS

Schedule A (07/30/2015)          Contract Number: 001-0106435-000          Page 1 of 4

**End-of Term Options:**

**1. FPO/PRO**

Paragraph 23 of the Lease, as applicable to this Schedule A, is hereby amended to read in its entirety as follows:

23.Lessees Options

**Purchase or Renew Only (FPO/PRO)**

| Purchase Amount | Renewal Lease Term | Base Index | Projected Renewal Rental Amount* | Renewal Rental Payment Frequency | Total Number of Renewal Rentals |
|---|---|---|---|---|---|
| $5,940.00 | 12 | 90 DAY FFCN | $367.96 | Monthly | 12 |

*Exclusive of applicable tax on rentals

So long as all amounts due Lessor have been paid and no Event of Default has occurred and is continuing, at the expiration of the Scheduled Lease Term Lessee shall have the option to purchase the Equipment, AS-IS-WHERE-IS for a purchase price equal to Purchase Amount described above.

Lessee's right to exercise said option is conditioned upon: (a) Lessee having fully performed all of the terms and conditions of the Lease and all other agreements between Lessor and Lessee, at the time and in the manner required therein; (b) Lessor having received written notice of Lessee's election to exercise said option at least ninety (90) days prior to the expiration of the Scheduled Lease Term applicable to the Equipment; and (c) Lessee's payment to Lessor of said purchase price, together with all taxes applicable to the sale of the Equipment. In the event Lessee does not exercise the option to purchase the Equipment in accordance with the terms and conditions set forth in this Paragraph 23, the Lease shall automatically, without further action on the part of the Lessor or Lessee, be renewed for an additional term, as described above ("Renewal Lease Term") and projected rental amount as described above ("Projected Renewal Rental Amount"), which such amount shall be adjusted as provided herein. The Projected Renewal Rental Amount has been indexed to the financial instrument yield described above ("Base Index"). In the event such financial instrument yield determined as of ninety (90) days prior to the expiration of the Scheduled Lease Term ("Actual Index") differs from the Base Index, the Projected Renewal Rental Amount shall be adjusted, upward or downward, based upon the difference between the Base Index and the Actual Index. Such adjusted amount shall be the "Renewal Rental Amount" for purpose of this Lease. In the event such financial instrument yield cannot be determined for purposes of calculating the Renewal Rental Amount, the Base Index and the Actual Index shall be the yield on a United States Treasury issued note of like or comparable duration as the financial instrument described as part of the Base Index above.

The first Renewal Rental Amount shall be due and payable by Lessee on the first day of the month following the expiration of the Scheduled Lease Term and shall continue to be paid on the Renewal Rental Payment Frequency described above until the Total Number of Renewal Rentals provided herein have been paid.

Upon expiration of the Renewal Lease Term, Lessee shall return the Equipment to Lessor in accordance with the terms of the Lease applicable to the Equipment, or so long as all amounts due Lessor have been paid, no Event of Default has occurred and is continuing, and if Lessee shall have given Lessor written notice at least one hundred eighty (180) days prior to the expiration of the Renewal Lease Term, Lessee may purchase the Equipment, AS-IS-WHERE -IS, for an amount equal to its then fair market value.

As used in this Paragraph 23, Equipment shall mean all, but not less than all, of the Equipment.

**Maintenance/Use, Return, Holdover Rent:**

**2. Maintenance and Return (Trailer)**

(1) Maintenance and Use

During the term of the Lease, Lessee shall, at its expense, maintain the Equipment under a preventive maintenance program by qualified personnel who possess a working knowledge of the mechanical operation of the Equipment in the manner and in accordance with any schedule recommended or specified by each manufacturer and in a manner which will not limit any manufacturer's warranty thereon. Lessee will maintain the Equipment as prescribed and recommended by the Maintenance Council of the American Trucking Association to meet all United States Department of Transportation ("DOT") requirements. All components, replacement or add on parts and fluids used in connection with the Equipment must meet the manufacturer's standards.

(2) Return of Equipment

(i) Lessee shall give written notice to Lessor at least ninety (90) days prior to the expiration of the Lease Term of its intent to return to Lessor all, but not less than all, of the Equipment. In addition, Lessee shall maintain the Equipment in compliance with all applicable laws, rules, and regulations.

(ii) Such notice shall contain a detailed inventory of the Equipment and all components thereof, including a listing of model and serial number of all components and attachments comprising the Equipment.

(iii) At any time within ninety (90) days prior to expiration of the Lease Term, upon receiving reasonable notice from the Lessor, Lessee

shall make the Equipment available for on-site operational inspections by Lessor or potential purchasers.

(iv) Not more than thirty (30) days prior to expiration of the Lease Term, Lessee shall at its own cost and expense, provide Lessor with the report of a certified dealer or manufacturer of the Equipment, or qualified Equipment maintenance provider acceptable to Lessor, that a comprehensive physical inspection and testing of the Equipment has been performed and that such Equipment is in the condition required of the Lease.

(v) Upon delivery of each Item of Equipment to Lessor, such Item of Equipment shall be in the following condition:

   i) The Equipment shall have good clean overall appearance. Decals or other Lessee identification shall be removed (not painted over) at Lessee's expense, without damage to the Equipment

   ii) The cost to repair physical damage, internal and external, shall not exceed Two Hundred Fifty Dollars ($250.00) for each Item of Equipment. Any costs incurred by Lessor to recondition or repair any Item of Equipment in excess of Two Hundred Fifty Dollars ($250.00) shall be paid to Lessor by Lessee immediately upon demand by Lessor.

   iii) All components and accessories originally furnished with the Equipment or the substantial equivalent replacement shall be installed and in good working order within the manufacturer's specified operating tolerances.

   iv) Brake and drums shall not be cracked, linings will have fifty percent (50%) minimum remaining wear. All axle and suspension components including but not limited to, bearings, bushings, seals, adjusters, and drums will be within the manufacturer's specified operating tolerances and meet DOT inspection requirements.

   v) The frame and integral parts (including but not limited to, cross members, kingpin, side rails, corner caps, floor, side posts, side ports, lights, door hinges, door frames, rear floor threshold, and tandem mountings) shall be in efficient working condition and free of physical damage.

   vi) Tires will be matched tread radials, as originally supplied, with fifty percent (50%) minimum remaining tread.

   vii) if the Equipment includes refrigeration units, such refrigeration units shall be mechanically sound and in good working order, free of damage or leaks and capable of performing at its Air Conditioning and Refrigeration Institute ("ARI") rated BTU output and hold same to manufacturer's rated specification without oil leakage or blowby. The insulating ability of Equipment including refrigeration units, as measured by the UA factors and air leakage, shall be at least eighty percent (80%) of original specifications.

(vi) Upon the return of the Equipment, Lessee shall provide Lessor with copies of all maintenance and repair records for each Item of Equipment.

<u>(3) LESSEE'S OPTIONS</u>:

"As used in Paragraph 23, Equipment shall mean all, but not less than all, of the Equipment described in any Schedule A."

**Other Terms and Conditions:**

**3.  Daily Billing Option**

In the event that Lessee has a previous Schedule A under the Daily Billing Option, Lessee hereby requests Lessor to adjust the regular payment date for this Schedule A to match the regular payment date of the previous Schedule A as a convenience to Lessee. In such case, a full rental payment shall be due on the Scheduled Lease Commencement Date, followed by another full rental payment on such adjusted regular payment date (even though such adjusted regular payment date may be less than a full rental period after the Scheduled Lease Commencement Date). The resulting excess rental amount paid will be credited against the final rental payment. As compensation for Lessor's willingness to provide this accommodation to the Lessee, no interest will be paid on such excess rental amount.

**Lessor: FARM CREDIT LEASING SERVICES CORPORATION**

By:

_____    _____Bob Bimson_____    _____Manager, Lease Operations_____
Signature                          Name                       Title

**Lessee(s): GOOD FORAGE, LLC.**

_____    _____Clayton Good_____    _____Manager_____
Signature                          Name                       Title

| Lessee Address | City, State, Zip | Contact | Phone |
|---|---|---|---|
| 25605 County Road 62 1/2 | GREELEY  CO  80631-9675 | Clayton A Good | ▮▮▮▮▮ |

Schedule A (07/30/2015)            Contract Number: 001-0106435-000            Page 4 of 4