## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03415-GPG-MEH

Farm Credit Leasing Services Corporation,

      Plaintiff,

v.

Good Forage, LLC; Clayton A. Good;
Arnold Good; and Wesley James Wittman,

      Defendants.

---

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT WESLEY JAMES WITTMAN'S ABUSE OF PROCESS COUNTERCLAIM

---

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1(d), Plaintiff Farm Credit Leasing Services Corporation ("Farm Credit Leasing"), by and through its undersigned counsel, respectfully submits this Reply in Support of Plaintiff Farm Credit Leasing Services Corporation's ("Farm Credit Leasing") Motion to Dismiss Defendant Wesley James Wittman's ("Wittman") Abuse of Process Counterclaim ("Motion to Dismiss"). ECF No. 43.

### INTRODUCTION

Deploying the old adage that sometimes the best defense is a good offense, Wittman attempts to morph defensive allegations that he allegedly did not execute an equipment lease into an offensive cause of action claiming this entire lawsuit was commenced for an ulterior purpose and that Farm Credit Leasing improperly used the legal process in an effort to enforce its basic contractual and legal rights. Wittman's litigation strategy, however, fails because the pertinent

legal authority is clear that the allegations asserted are insufficient to support an abuse of process counterclaim as a matter of law.[1]

Given this reality, it is no surprise that Wittman's Response in Opposition to Farm Credit Leasing's Motion to Dismiss (ECF No. 44) ("Response") altogether neglects to address the multitude of cases referenced by Farm Credit Leasing in the Motion to Dismiss. *See Sterenbuch v. Goss*, 266 P.3d 428 (Colo. App. 2011); *Hertz v. Luzenac Grp.*, 576 F.3d 1103 (10th Cir. 2009); *Pinon Sun Condo. Ass'n, Inc.*, 2019 WL 140710 (D. Colo. Jan. 9, 2019); *Partminer Worldwide Inc. v. Siliconexpert Techs Inc.*, No. 09-cv-00586-MSKMJW, 2010 WL 502718 (D. Colo. 2010); and *Gustafson v. Am. Fam. Mut. Ins. Co.*, 901 F. Supp. 2d 1289 (D. Colo. 2012). In each of these cases, courts dismissed abuse of process claims for failure to allege an improper use of process, and the Response fails to attempt to explain why Wittman's counterclaim is owed a different result. *See generally* Response. Farm Credit Leasing further cited *Roberts v. Benson*, No. 21-CV-03029-CMA-NRN, 2023 WL 2569872 (D. Colo. Mar. 20, 2023) and *Mackall v. JPMorgan Chase Bank, N.A.*, 356 P.3d 946 (Colo. App. 2014) as analogous cases where courts rejected abuse of process allegations based on failure to allege an improper purpose. Once again, Wittman offers no rebuttal. *See generally* Response.

---

[1] In a futile effort to deflect from obvious legal deficiencies plaguing his counterclaim, Wittman attempts to focus the Court on procedure by arguing Farm Credit Leasing is allegedly "ignoring [the] standard of review." Response, p. 2. Farm Credit Leasing is well aware of the governing standard of review, which includes no requirement that the Court accept Wittman's conclusory allegations, which he attempts to characterize as "facts." Regardless, Wittman is unable to state a claim as a matter of law.

The clear explanation is that Wittman outright ignored these cases because he cannot rebut or get past them.[2] His counterclaim is legally deficient and the legal authority he relies upon is readily distinguishable. Accordingly, the Court should grant Farm Credit Leasing's motion.

## ARGUMENT

### I.   Wittman Shifts His Allegations from Those Made in the Counterclaim But He Still Fails to State Necessary Elements to Sustain an Abuse of Process Claim.

Wittman's counterclaim alleges Farm Credit Leasing filed this lawsuit for the improper purpose of "threatening, intimidating, harassing, and bullying [him] into providing further cooperation and support of Farm Credit's efforts to trace its property," Counterclaim, ¶59, and "to punish and harass Mr. C. Good . . . in the hopes that Mr. C. Good's brother-in-law and sister will convince Mr. C. Good to pay[.]" Counterclaim, ¶60. The Response slightly alters his approach, alleging that Farm Credit Leasing filed against Wittman to force him (1) to act as a "de facto private investigator" for Farm Credit and (2) to, along with his wife, pressure Clayton Good into "abandoning his defense of his case." Response, p. 6.

Wittman's updated verbiage aside, the assertions remain flawed, as explained in Farm Credit Leasing's Motion to Dismiss, because Wittman provides no factual allegations to support them—nor could he—as Farm Credit Leasing has never suggested it is only interested in ultimately

---

[2] Curiously, Wittman instead cites a string of cases that no longer represent the current status of abuse of process law in Colorado. *See* Response, pp. 3-4 (citing *Yadon v. Lowry*, 126 P.3d 332 (Colo. App. 2005) and other cases for the proposition that "an additional showing" is required where the alleged abuse of process is the very filing of a suit). Wittman is undoubtedly aware of *Boyer v. Health Grades, Inc.*, 359 P.3d 25 (Colo. 2015), where the Colorado Supreme Court held that the "traditional elements . . . govern . . . abuse of process claim[s]" where the matter is a "purely private dispute," like the one here. *Cross Creek Ranch, LLC v. Crotts*, No. 23-CV-00050-RM-JPO, 2024 WL 1156601 (D. Colo. Mar. 18, 2024) (summarizing *Boyer*). Wittman surely has no interest in making the "additional showing" required prior to *Boyer* and is only citing the additional showing requirement to analogize to *Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, No. 13-cv-3206-WJM-KMT, 2016 WL 8609397 (D. Colo. Sep. 9, 2016), where the Court unnecessarily applied it. Response, pp. 11-12. Witman's attempt to analogize *Crew Tile* fails anyway, for the reasons discussed herein.

CORE/3009126.0396/189166634.2

pursuing or seeking payment from Clayton Good. And the undisputed facts, and the Complaint itself, support this. For instance, Wittman cannot dispute that Farm Credit Leasing is also separately pursuing Clayton Good related to his conduct and breaches of obligation in connection with the guaranties he signed. ECF No. 1. There are also no allegations supporting Wittman's assertion that Farm Credit Leasing is somehow using this lawsuit to pressure his wife, in turn, to pressure Clayton Good. In the end, Wittman's arguments fail simply because they ignore that Farm Credit Leasing is pursuing both Wittman and Clayton Good (and others) based on separate and distinct obligations owed to Farm Credit Leasing. As such, Wittman's allegations fail to satisfy the plausibility standard required to allege improper purpose. *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1232 (10th Cir. 2022). Unsurprisingly, Wittman fails to cite a single case in his "improper purpose" argument section. *See* Response, p. 7.

To support his improper use of process arguments, Wittman relies on pair of cases, but they are readily distinguishable. Indeed, in *Am. Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161 (Colo. App. 2003), the trial court found that there was no legal basis for the insurance company to bring a claim against the insured's wife and the only reason it did so was to obtain money from the insured related to other claims. That is not the situation here. As mentioned above, it is undisputed that Farm Credit Leasing has sued Wittman based on *his* and Good Forage LLC's breaches of obligations owed to Farm Credit Leasing pursuant to what has been previously defined as the Swather Lease, as Good Forage LLC and Wittman are co-lessees as to those obligations. *See* ECF No. 1-11 (the "Swather Lease"). There is a direct legal basis to pursue Wittman, which has nothing to do with Clayton Good or his potential liability to Farm Credit Leasing arising from separate claims asserted against Mr. Good.

4

Further, as set forth in Farm Credit Leasing's Motion to Dismiss, all of the relief Farm Credit Leasing seeks against Wittman relates to his breach of the Swather Lease as well as his related direct actions and/or inactions. That is exactly what the legal process is designed to accomplish. Wittman's argument ignores these facts and attempts to suggest he is a complete stranger to the agreements, that there are no facts implicating him, that the allegations asserted in the Complaint only relate to Clayton Good, and he is only being named to pressure Clayton Good. None of these statements find support in the actual facts asserted in the counterclaim, and they are directly belied by the allegations in the Complaint.

Wittman's reliance on *Salstrom v. Starke*, 670 P.2d 809 (Colo. App. 1983) is similarly flawed. There, a property seller filed an abuse of process claim against a prospective purchaser after the prospective purchaser filed a lis pendens against the seller's property. *Id.* at 811. The prospective purchaser filed the lis pendens after contract negotiations fell apart and the seller refused to sell the property to the prospective purchaser on the terms demanded. *Id.* The lis pendens apparently prevented the seller from selling the property to other purchasers. *Id.* The seller claimed there was no final agreement between the parties and, therefore, no basis for the lis pendens. *Id.* The court held sufficient evidence supported the abuse of process claim because the prospective purchaser knew there was no binding contract or other interest prior to filing the lis pendens. *Id.* Further, the court found it sufficient that the prospective purchaser filed the lis pendens *solely* to prevent the seller from selling the property to a third party and to coerce the seller into accepting its prior offer, which is not a proper purpose for the lis pendens and, thus, not a proper use of the legal process (i.e., filing of the lis pendens). *Id.*

CORE/3009126.0396/189166634.2

Here, there is no evidence, and not even a single allegation, that Farm Credit Leasing "knew" at the time the Swather Lease was signed that Wittman purportedly did not did execute it. At best, Wittman alleges that he informed Farm Credit Leasing that he did not sign the Swather Lease a year or more *after* it was executed. The situation here is markedly different from *Salstrom* where it was unquestionably known in advance that no contract supported the position taken by the prospective buyer.

**II.**    ***Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.* is Materially Distinguishable from the Facts of this Case.**

The primary case that Wittman relies on—*Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*—is also distinguishable from this case. No. 13-cv-3206-WJM-KMT, 2016 WL 8609397 (D. Colo. Sep. 9, 2016).  In *Crew Tile*, the plaintiff filed suit alleging, among other things, a breach of contract against the defendant. *Id*. at *2–9. Defendant responded, in part, by asserting various counterclaims, including one for abuse of process.  *Id*. at *19. The basis of defendant's abuse of counterclaim was that plaintiff fabricated and forged the underlying contract it claimed defendant breached, thus initiating sham litigation against defendant.  *Id*.

Plaintiff moved for summary judgment on the abuse of process counterclaim, arguing in part that defendant could not establish the element of ulterior motive because plaintiff "has only used the legal process for its proper purpose, namely to enforce disputed contract rights." *Id*. at *19. In denying the plaintiff's summary judgment motion, the court initially acknowledged that in a typical lawsuit, plaintiff's argument would be correct because initiating a breach of contract proceeding "will not constitute abuse of process unless it can be shown that the action was used for some purpose other than to provide a remedy for the breach of contract," and "any restrictions

on access to the courts should avoid creating a 'chilling effect' that could deter good-faith litigants." *Id*. (internal citations and quotations omitted.). However, the court went on to state:

> However, at the summary judgment stage, the Court takes the facts in the light most favorable to [defendant]. After review of the evidence, the Court concludes that a reasonable jury could conclude not only that the parties have a heated contract dispute, but ***that [plaintiff] did in fact forge the disputed Agreement***, and brought this case as a "sham" litigation on that basis.

*Id*. at *20 (emphasis added).

The court's decision to deny summary judgment turned on one critical allegation that it determined was backed by sufficient evidence to allow the counterclaim to move forward: that plaintiff *itself* had forged and fabricated the underlying agreement. *Id.* Because the court apparently determined that plaintiff actually forged the underlying agreement, plaintiff knew from the beginning that there was never a valid agreement—because plaintiff fabricated it—and plaintiff never had any rights to enforce that fake agreement, resulting in sham litigation.

No such facts exist, or have been alleged, in this matter.  Wittman has not, nor could he, allege that Farm Credit Leasing forged or fabricated the underlying Swather Lease agreement. *See generally* Counterclaim. Instead, Wittman's Answer and Counterclaim suggests that Clayton Good forged Wittman's signature.[3] Counterclaim, ¶¶ 6-10, 12 ("Defendant Wittman never gave Mr. C. Good . . . permission to sign the swather lease on his behalf"), 31. As noted above, the fact that the plaintiff in *Crew Tile* was found to have forged the underlying agreement was the dispositive fact that moved the needle in that case. Such a key fact, or even any allegation, is completely absent here.

---

[3] Curiously, Wittman alleged no cross-claim for fraud, or any cross-claims whatsoever, against Clayton Good.

CORE/3009126.0396/189166634.2

Instead, what Wittman alleges in this case is that approximately one year after the Swather Lease was executed, he contacted Farm Credit Leasing to report that he allegedly did not sign it. Counterclaim, ¶¶ 17, 24-26. Wittman then argues that because he provided certain information to Farm Credit Leasing—which in Wittman's solely subjective view demonstrates that his signature was forged—and there was a subsequent amendment to a Uniform Commercial Code ("UCC") filing, Farm Credit Leasing allegedly admitted his signature was forged and unequivocally released Wittman from the Swather Lease. Counterclaim, ¶¶ 26-30, 33-49. But therein lies one of the problems with Wittman's arguments: All of his allegations relate to circumstances that allegedly occurred *well after* the Swather Lease was executed, and none of them either demonstrate (1) Farm Credit Leasing's knowledge of any purported fraud or (2) that Farm Credit Leasing actually released Wittman from his obligations thereunder. Wittman is simply construing certain allegations in favor of his own position—i.e., that he is not liable under the Swather Lease. At best, Wittman's arguments may ultimately go to some form of a defense, but they are insufficient to support an abuse of process counterclaim as a matter of law.

It is also worth noting that the Response repeatedly argues and implies that after Wittman advised Farm Credit Leasing that he allegedly did not sign the Swather Lease, Farm Credit Leasing admitted and agreed that Wittman's signature was forged. Response, pp. 4-6, 9. However, nothing Wittman attached to his Response supports such a conclusion and common sense dictates that there would be no way for Farm Credit Leasing to actually know or conclude that his signature was actually a forgery. *See* Response, Exhibits A–E.[4] Simply providing a comparison signature to a

---

[4] Setting aside whether Wittman's attempt to retroactively include the exhibits with his Counterclaim is proper, the purported exhibits change nothing as none of the exhibits substantiate the elements of Wittman's claim. Tellingly, Wittman himself largely neglects to reference the exhibits in his Response, failing to reference Exhibits B-D at all. *See generally* Response.

8

Farm Credit Leasing employee fails to conclusively establish whether Wittman signed (or authorized someone else to sign on his behalf) the Swather Lease, or demonstrate an actual forgery.

Indeed, this is the key distinction with the *Crew Tile* case. As discussed above, the seminal issue in that case was that the plaintiff forged the agreement at issue, which necessarily meant the plaintiff knew it was false and a forgery from the beginning. That is far different from an after-the-fact allegation that Wittman did not sign the Swather Lease simply because the signature on the contract does not exactly match the signature on his driver's license.

The same is true for Wittman's UCC amendment allegation. As explained in the Motion to Dismiss, the underlying transaction here is a lease wherein Farm Credit Leasing owns (and retains ownership) of the equipment at issue and the lessee has a right to possession of it so long as it is not in default. Motion to Dismiss, p. 10.  The purpose of filing a UCC financing statement is to perfect a lender's lien on a piece of equipment owned by the borrower that is financed by the lender. The precautionary UCC here has no legal significance and therefore does not support an allegation that Wittman received an unequivocal release of his obligations because Farm Credit Leasing always maintained an ownership interest in the equipment, which did not change as a consequence of the amendment. *Id*. More to the point, Wittman points to nothing that serves as an unconditional release of the obligations he owed to Farm Credit Leasing. In fact, Wittman's argument would similarly fail even if the underlying transaction were a loan secured by the swather (rather than a lease) because the UCC filing only relates to the collateral securing the loan, not whether a party owes monetary obligations to the lender (in other words, UCC impacts what collateral secures the loan, not whether the borrower owes obligations). None of this provides any support for Wittman's abuse of process counterclaim.

Wittman concludes by dramatically asserting that if the Farm Credit Leasing's view of abuse of process law is correct, then *Crew Title* cannot stand and countless victims of forgery will now be the subject to groundless lawsuits. Response, pp. 13-14. Wittman's fearmongering should be ignored as courts have already emphasized that *Crew Title's* holding is narrow. *See USI Ins. Servs., LLC v. Morris*, No. 22-CV-3180-GPG-MDB, 2024 WL 1436316, *5 (D. Colo. Feb. 21, 2024); *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-CV-01595-CMA-MJW, 2019 WL 140710, *9 (D. Colo. Jan. 9, 2019).

In any event, Farm Credit Leasing is only asking the Court to follow the law as it currently exists, which mandates dismissal of Wittman's counterclaim. Moreover, Wittman's "hypothetical situations" are premised on defendants who are the victim of fraud and/or forgery perpetrated by the plaintiff litigant, which obviously is not at issue here. Response, p. 14. Thus, this Court can, and should, dismiss Wittman's abuse of process counterclaim without any concern of raising a conflict with *Crew Title*.

## IV.   The Court Should Ignore Wittman's Argument Concerning a Possible Motion to Amend.

Finally, Wittman alleges that if the Court were to find some "technical defect" in Wittman's abuse of process counterclaim, he should be permitted to amend. Response, p. 15. This Court need not address whether Wittman can adequately establish facts to support an abuse of process counterclaim based on a theoretical amendment because Wittman has not presented the proposed amendment via a proper motion to amend. *See* Fed. R. Civ. P. 15 (providing that amendments must be made via a motion or by providing the amendment itself). In any event, the additional "facts" that Wittman offers are unavailing. He claims he could allege additional facts about Farm Credit Leasing's alleged "abusive and coercive misuse of the Court's powers by seeking and obtaining a

court order to search Defendant Wittman's private property without a warrant, solely based on the basis of a forged document." Response, p. 15. This Court is undoubtedly aware that it permitted Farm Credit Leasing to inspect the Defendants'—not just Wittman's— properties because Defendants failed to disclose the location of Farm Credit Leasing's equipment. *See* ECF No. 31.

Under the circumstances, the Court's order was proper and well within the Court's authority. Wittman is and was a defendant in this case when the Court issued that order. The Court has wide discretion over the scope of discovery, including the authority to permit property inspections. *See* Fed. R. Civ. P. 34(a)(2). Additionally, Wittman's argument ignores that Farm Credit Leasing's claims against him include causes of action for replevin and unjust enrichment (Wittman has admitted to possessing and using the equipment at issue). Any and all of these claims are legally and factually supportable and are sufficient legal grounds for this Court to order an inspection. Any amendment based on this Court's prior order would futile and frivolous.

## CONCLUSION

For all of the forgoing reasons, Wittman is unable to plead a valid abuse of process counterclaim as a matter of law. Accordingly, the Court must dismiss it as a matter of law.

Respectfully submitted May 14, 2024.

*s/Zane A. Gilmer*
Benjamin J. Court (MN #0319016)
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
T: 612-335-1500
E: benjamin.court@stinson.com

Zane Allen Gilmer (CO #41602)
**STINSON LLP**

11

1144 15th Street, Suite 2400
Denver, CO 80202
T: 303-376-8400
E: zane.gilmer@stinson.com

CORE/3009126.0396/189166634.2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 14, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Zane A. Gilmer*
Zane A. Gilmer

CORE/3009126.0396/189166634.2