IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-03415-GPG-CYC

FARM CREDIT LEASING SERVICES CORPORATION,

    Plaintiff,

v.

GOOD FORAGE, LLC;
CLAYTON A. GOOD;
ARNOLD GOOD; and
WESLEY JAMES WITTMAN;

    Defendants.

**ORDER**

    Before the Court is Plaintiff's Motion to Dismiss Defendant Wesley James Wittman's Abuse of Process Counterclaim (Motion) (D. 43) filed by Plaintiff Farm Credit Leasing Services Corporation (Farm Credit). Farm Credit seeks to dismiss the abuse of process counterclaim filed by Defendant Wesley James Wittman (D. 24 at 31–42). For the reasons set forth below, the Court GRANTS the Motion.

    This lawsuit relates to a series of leases for farm equipment (D. 1). Farm Credit is a federally chartered lender that alleges, in part, that Wittman breached a lease for a swather[1] and, rather than return it, sold it (*id.* at ¶¶ 40–46). Wittman emphatically denies that he co-signed the

---

[1] A swather is a device on a mowing machine for raising uncut fallen grain and marking the line between cut and uncut grain.

1

swather lease (D. 24 at ¶¶ 40–46). And he brings a related counterclaim for abuse of process against Farm Credit (*id*. at 31–42).

Wittman is the brother-in-law of Defendant Clayton A. Good (D. 24 at 32).[2] Around the time the swather lease was signed, Clayton and Wittman discussed Wittman becoming part owner of Defendant Good Forage, LLC (Good Forage) and co-signing the swather lease (*id*.). They never reached agreement, Wittman never saw the lease, he never gave permission for anyone to sign it on his behalf, he never spoke with Farm Credit prior to the date it was signed, and he never agreed to be responsible for any related obligations (*id*. at 32–33).

Wittman discovered that Farm Credit believed he had signed the swather lease when it sent him notices about past due payments (D. 24 at 34). He contacted Farm Credit and said he never signed the lease (*id*.). Through email, Farm Credit requested an affidavit and examples of Wittman's signature, including a copy of his driver's license (*id*. at 35). Wittman sent a signed statement, a copy of his driver's license, and another example signature (*id*.). He asked for any documentation Farm Credit had tying him to Good Forage; it never responded with any such documentation (*id*.). Instead, Farm Credit responded that "[w]e have updated our systems to reflect the information you provided. You should no longer receive late payment notices for this account" (*id.* at 36). Farm Credit also filed an amended UCC financing statement related to the swather lease removing Wittman's name (*id*.). Wittman later voluntarily assisted with Farm Credit's collection efforts my inquiring in the community about the whereabouts of the swather (*id*.). Without further contacting Wittman, Farm Credit filed suit against him (*id*. at 38). He

---

[2] The background facts are taken from Wittman's counterclaim (D. 24 at 31–42) and assumed to be true for the purposes of the Motion.

counterclaimed for abuse of process, and Farm Credit moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) (D. 43).

Under Rule 12(b)(6), a court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a pleading must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the pleading must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a pleading may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the pleading are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

"In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages." *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007) (citing *Trask v. Nozisko*, 134 P.3d 544, 553 Colo.App. 2006)). "The essential element of an abuse of process claim is the use of a legal proceeding in an improper manner." *Trask v. Nozisko*, 134 P.3d at 554 (citing *Inst. for Prof'l Dev. v. Regis Coll.*, 536 F.Supp. 632 (D. Colo. 1982)). "Therefore, an improper *use* of the process must be established." *Id*. (citation omitted). The Parties' dispute turns on this second element, whether Wittman has sufficiently alleged improper use of legal process.

"An improper use of the legal process occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide." *Gustafson v. Am. Fam. Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1305 (D. Colo. 2012). "However, in an abuse of process claim, even the filing of a lawsuit the filer knows to be unfounded is insufficient to demonstrate the improper use of the legal process." *Id*.

Wittman argues that he has sufficiently alleged that Farm Credit is misusing the legal process in at least two ways: (1) pressuring Defendant C. Good's family members and (2) co-opting Wittman as a de facto agent for Farm Credit's benefit (D. 44 at 7). He asserts that his counterclaim supports an inference that "Farm Credit has brought this lawsuit against him so that Defendant Wittman and his wife will plead with and otherwise pressure their close family member, Defendant C. Good, into remitting the money he purportedly owes Farm Credit in order to stop the baseless prosecution of themselves" (*id*. at 8). Wittman analogizes this case to *Am. Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161 (Colo. App. 2003), where an insurance company brought a

4

baseless claim against the insured's spouse to apply pressure. He also analogizes these circumstances to *Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, No. 13-CV-3206-WJM-KMT, 2016 WL 8609397, at *19 (D. Colo. Sept. 9, 2016), where the abuse of process counterclaim depended on allegations that the plaintiff itself had forged the contract at issue.

Wittman further argues that the Farm Credit is using litigation related to the swather lease to coerce him to "continue to serve as its private investigator to track down any remaining missing equipment" (D. 44 at 9). Analogizing his circumstances to those in *Salstrom v. Starke*, 670 P.2d 809 (Colo. App. 1983), Wittman argues that "it is well-established under Colorado law that a plaintiff cannot use the adverse effects of a legal proceeding to coerce an opponent to take certain actions outside of litigation that the opposing party otherwise would never have agreed to take" (D. 44 at 8). In *Salstrom,* a spurned purchaser filed a lien on the property to drive away the higher bidder and force the seller to accept a lower offer. Wittman asserts that Farm Credit's actions here amount to instituting "sham" litigation that abuses the judicial process (*id*. at 12).

Wittman's arguments are not persuasive under governing precedents severely limiting abuse of process claims based on filing a lawsuit.[3] Although Wittman disputes the veracity of *his* signature on the swather lease, he does not argue that Farm Credit fails to bring a colorable claim or requests relief inconsistent with the claims alleged. Where "a party files 'claims that are colorable on their face, and requests relief consistent with the claims alleged,' there is no abuse of process, even if the claims are factually baseless.'" *Roberts v. Benson*, No. 21-CV-03029-CMA-NRN, 2023 WL 2569872, at *4 (D. Colo. Mar. 20, 2023), *report and recommendation adopted*,

---

[3] The legal and policy reasons for this are complex and beyond the scope of this Order. *See Boyer v. Health Grades, Inc.*, 2015 CO 40, ¶¶ 8–15, 359 P.3d 25, 26–29 (discussing First Amendment protections in relation to sham litigation).

No. 21-CV-03029-CMA-NRN, 2023 WL 2813273 (D. Colo. Apr. 5, 2023) (quoting *Partimer Worldwide Inc. v. Siliconexpert Techs. Inc.*, No. 09-cv-00586-MSK-MJW, 2010 WL 502718, at *3 (D. Colo. Feb 10, 2010). The Court applies an objective standard and "looks to the nominal purpose for which the process is invoked." *Partimer Worldwide Inc.*, 2010 WL 502718, at *3. Here, Farm Credit sues to recover monies owed under a contract and recovery of related property. "This is the proper purpose for which a lawsuit is filed." *Id*.

While Wittman's allegations cast substantial doubt on his liability and suggest Farm Credit was aware of these issues, they do not show that Farm Credit is using the judicial process improperly.[4] Unlike the cases that Wittman cites, there is no suggestion here that Farm Credit itself forged a lease to foment sham litigation or brings this litigation solely for improper purposes. *See Beyer Laser Ctr., LLC v. Polomsky*, No. 16-CV-03099-MEH, 2019 WL 5556082, at *4 (D. Colo. Oct. 25, 2019) (explaining that "an incidental motive of spite or an ulterior purpose of benefit to the defendant" will not support a claim for abuse of process (quoting Restatement (Second) of Torts § 682 cmt. b. (1977)). At most, his non-conclusory factual allegations show that Farm Credit had strong reason to doubt its basis for including Wittman as a defendant, but this is not enough to support an abuse of process claim. *Gustafson*, 901 F. Supp. 2d at 1305. The Court grants the Motion and dismisses Wittman's counterclaim.

Accordingly, it is ORDERED that Plaintiff's Motion to Dismiss Defendant Wesley James Wittman's Abuse of Process Counterclaim (D. 43) is GRANTED and Defendant Wesley James Wittman's Counterclaim (D. 24 at 31–42) is DISMISSED.

---

[4] Wittman suggests that he could add further allegations by amendment (D. 44 at 15–16), but he has not filed a motion to amend. Additionally, his proposed allegations that Farm Credit sought discovery related to issues in the case suffer from the same issues as his Counterclaim.

DATED January 28, 2025.

BY THE COURT:

_____
Gordon P. Gallagher
United States District Judge
