IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03415-GPG-CYC

Farm Credit Leasing Services Corporation,

    Plaintiff,

v.

Good Forage, LLC; Clayton A. Good;
Arnold Good; and Wesley James Wittman,

    Defendants.

---

### MOTION FOR DEFAULT JUDGMENT AGAINST GOOD FORAGE, LLC

---

Pursuant to Fed. R. Civ. P. 55(b) and D.C.COLO.LCivR 55.1, Plaintiff Farm Credit Leasing Services Corporation ("FCL") respectfully submits this Motion for Default Judgment Against Good Forage, LLC ("Motion") and, in support thereof, states as follows:

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1

FCL has not conferred with Good Forage, LLC ("Good Forage") regarding the relief sought in this Motion as no counsel for Good Forage has entered an appearance in this case. Undersigned counsel did discuss this Motion with Good Forage's principal, Clayton Good ("C. Good"), who is also an individual defendant in this matter.

### FACTS AND PROCEDURAL HISTORY

1.    FCL is a federally chartered instrumentality of the United States. It is engaged in, among other things, the business of leasing equipment and other personal property to businesses and sole proprietorships in the agriculture industry. Ex. A, Aff. of Stefano Benvenuti, ¶ 4.

1

2. As set forth more fully below, Good Forage is a customer of FCL that entered into certain agriculture equipment leases with FCL and, in turn, obtained possession of said equipment, but ultimately failed to pay FCL all amounts due to FCL pursuant to the leases, failed to return FCL's agricultural equipment, and instead sold FCL's equipment, through its principal Clayton Good, without authorization and failed to deliver the sale proceeds to FCL. Ex. A, Aff. of Stefano Benvenuti, ¶¶ 5, 9.

**The Baler Lease**

3. On or about September 12, 2014, Good Forage entered into a commercial equipment lease agreement with FCL, as evidenced by that certain Commercial Equipment Lease Agreement dated September 12, 2014, identified as contract number 001-0065467-000, executed and delivered by Good Forage in favor of FCL (the "Baler Lease"), for the purpose of leasing a 2014 Massey Ferguson Baler, model number 2270, serial number M22700EHB04531 (the "Baler"). Ex C, Baler Lease; Ex. A, Aff. of Stefano Benvenuti, ¶ 11; Ex. B, C. Good's Answer, ¶ 9.

4. According to Paragraph 12 of the Baler Lease, Good Forage shall be in default of the Baler Lease if, among other things, it (1) fails to pay when due any rent or other amount required to be paid; (2) fails to perform any other provisions under the Baler Lease or violates any of the covenants or representations made; or (3) defaults under any other agreement with FCL or under any material obligation to a third party for borrowed money or deferred purchase price of property. Ex. C, Baler Lease, ¶ 12; Ex. A, Aff. of Stefano Benvenuti, ¶ 12; Ex. B, C. Good's Answer, ¶ 12.

2

5.      Paragraph 13 of the Baler Lease further provides that upon a default, FCL shall have the right, in its sole discretion, to exercise its remedies, which include but are not limited to: (1) recovering all rent or other amounts then due and to become due; (2) recovering all of FCL's costs and expenses (including legal expenses and attorneys' fees) in enforcing the Baler Lease; and (3) availing itself to any other remedy available at law or in equity. Ex. C, Baler Lease, ¶13; Ex. A, Aff. of Stefano Benvenuti, ¶ 13; Ex. B, C. Good's Answer, ¶ 12.

6.      Paragraph 16 of the Baler Lease provides that all enforcement actions related to the lease shall be governed by the laws of the State of Minnesota. Ex. C, Baler Lease, ¶14; Ex. A, Aff. of Stefano Benvenuti, ¶ 14.

7.      Pursuant to the Baler Lease, Good Forage agreed to make one rental payment of $19,004.30 in September 2014 followed by five consecutive annual rental payments of $13,862.99 commencing in September 2015. Ex. C, Baler Lease, p. 1; Ex. A, Aff. of Stefano Benvenuti, ¶ 15; Ex. B, C. Good's Answer, ¶ 13.

8.      Good Forage failed to adhere to its payment obligations pursuant to the Baler Lease. Specifically, Good Forage failed to remit a $13,862.99 annual rental payment due in September of 2021 and has subsequently failed to bring the lease current. Good Forage has not made any payments on the lease since June of 2022, even though amounts remain due and outstanding. Ex. A, Aff. of Stefano Benvenuti, ¶ 16.

9.      As of April 18, 2025, the amount immediately due and payable pursuant to the Baler Lease, exclusive of FCL's costs, expenses and recoverable attorneys' fees incurred, is $88,178.11.  Ex. A, Aff. of Stefano Benvenuti, ¶ 17.

3

**The Master Lease**

10.  On or about March 5, 2015, Good Forage entered into another commercial equipment lease agreement with FCL, as evidenced by that certain Lease Agreement, executed and delivered by Good Forage in favor of FCL (the "Master Lease"), for purpose of leasing equipment more specifically identified in related lease schedules, pursuant to the terms and conditions as more specifically identified therein.  Ex. D, Master Lease; Ex. A, Aff. of Stefano Benvenuti, ¶ 18; Ex. B, C. Good's Answer, ¶ 20.

11.  Pursuant to Paragraph 18 of the Master Lease, Good Forage shall be in default of the Master Lease if, among other things, it (1) fails to pay all or any part of the rental payment or any other payment within 10 days after it becomes due and payable; (2) defaults under any other agreement executed with FCL at any time; or (3) defaults under any obligation for payment of borrowed money, for the deferred purchase price of property or any payment under any lease agreement. Ex. D, Master Lease, ¶ 18. Ex. A, Aff. of Stefano Benvenuti, ¶ 19.

12.  Paragraph 19 of the Master Lease further provides that upon a default, FCL shall have the right, in its sole discretion, to exercise its remedies, which include but are not limited to: (1) declaring the entire amount of rental and other charges due and to become due hereunder for the entire lease term immediately due and payable; and (2) demanding payment of all costs incurred by FCL in the course of correcting any default (including attorneys' fees and costs). Ex. D, Master Lease, ¶ 19. Ex. A, Aff. of Stefano Benvenuti, ¶ 20.

4

13. Paragraph 31 of the Master Lease provides that the Master Lease, and all rights and obligations of the parties thereunder, shall be governed by Minnesota Law. Ex. D, Master Lease, ¶ 31. Ex. A, Aff. of Stefano Benvenuti, ¶ 21.

**The Shredder Schedule**

14. On or about October 27, 2016, Good Forage entered into a lease schedule with FCL in connection with the Master Lease, as evidenced by that certain Schedule A identified as contract 001-0082015-000 dated on October 27, 2016, executed and delivered by Good Forage in favor of FCL (the "Shredder Schedule"), for purpose of leasing a 2013 Hiniker Shredder, model number 5630H, serial number 5630H0026100 (the "Shredder"), pursuant to the terms and conditions as more specifically identified therein." Ex. E, Shredder Schedule; Ex. A, Aff. of Stefano Benvenuti, ¶ 22; Ex. B, C. Good's Answer, ¶ 24.

15. Pursuant to the Shredder Schedule, Good Forage agreed to make 20 consecutive quarterly rental payments of $2,094.87 commencing in October 2016. Ex. E, Shredder Schedule, p. 1; Ex. A, Aff. of Stefano Benvenuti, ¶ 23.

16. Good Forage failed to adhere to its payment obligations pursuant to the Shredder Schedule and, therefore, is in default of the Shredder Schedule and related Master Lease. Specifically, Good Forage failed to adhere to its payment obligations pursuant to the Shredder Schedule, and prior to recovery of the asset, a balance of $6,238.76 was past due. Ex. A, Aff. of Stefano Benvenuti, ¶ 24.

CORE/3009126.0396/197786126.5

17. Ultimately, the Shredder was retrieved by FCL and sold pursuant to FCL's collection efforts during this litigation and there is no remaining balance owed in connection with the Shredder Schedule. Ex. A, Aff. of Stefano Benvenuti, ¶ 25.

**The Stacker Schedule**

18. On or about January 24, 2019, Good Forage entered into another lease schedule with FCL in connection with the Master Lease, as evidenced by that certain Schedule A identified as contract 001-0101083-000 dated on January 24, 2019, executed and delivered by Good Forage in favor of FCL (the "Stacker Schedule"), for the purpose of leasing a 2014 Stinger Stacker, model number 6500, serial number 702 (the "Stacker"), pursuant to the terms and conditions as more specifically identified therein. Ex. F, Stacker Schedule; Ex. A, Aff. of Stefano Benvenuti, ¶ 26; Ex. B, C. Good's Answer, ¶ 28.

19. Pursuant to the Stacker Schedule, Good Forage agreed to make five consecutive annual rental payments of $36,340.88 commencing in January 2019. Ex. F, Stacker Schedule, p. 1; Ex. A, Aff. of Stefano Benvenuti, ¶ 27.

20. Good Forage failed to adhere to its payment obligations pursuant to the Stacker Schedule and, therefore, is in default of the Stacker Schedule and related Master Lease. Specifically, Good Forage failed to remit a $36,340.88 annual rental payment due in January of 2022 and has failed to make any subsequent payments. Ex. A, Aff. of Stefano Benvenuti, ¶ 28.

21. FCL recovered and sold the Stacker pursuant to FCL's collection efforts during this litigation, and the proceeds from the sale were applied to the outstanding balance on the Stacker Schedule. Nonetheless, as of April 18, 2025, the amount

6

immediately due and payable pursuant to the Stacker Schedule, exclusive of FCL's costs, expenses and recoverable attorneys' fees incurred, is $54,913.56. Ex. A, Aff. of Stefano Benvenuti, ¶ 29.

**The Trailer Schedule**

22. On or about September 18, 2019, Good Forage entered into another lease schedule with FCL in connection with the Master Lease, as evidenced by that certain Schedule A identified as contract 001-0106435-000 dated on September 18, 2019, executed and delivered by Good Forage in favor of FCL (the "Trailer Schedule"), for the purpose of leasing a 2020 Doonan Black Gold Drop Deck Trailer, model number 532DBBIDCIKQD, serial number 1D9BG532XLI609056 (the "Trailer"), pursuant to the terms and conditions as more specifically identified therein. Ex. G, Trailer Schedule; Ex. A, Aff. of Stefano Benvenuti, ¶ 30; Ex. B, C. Good's Answer, ¶ 33.

23. Pursuant to the terms of the Trailer Schedule, Good Forage agreed to make one rental payment of $5,403.48 in September 2019 followed by nine consecutive rental payments every six months of $3,699.91 commencing in March 2020. Ex. G, Trailer Schedule, p. 1; Ex. A, Aff. of Stefano Benvenuti, ¶ 31.

24. Good Forage failed to adhere to its payment obligations pursuant to the Trailer Schedule and, therefore, is in default of the Trailer Schedule and related Master Lease. Specifically, Good Forage failed to remit a $5,403.48 rental payment due in March of 2022 and has failed to make any subsequent payments. Ex. A, Aff. of Stefano Benvenuti, ¶ 32.

25. FCL recovered and sold the Trailer pursuant to FCL's collection efforts prior

7

to instituting this litigation, and the proceeds from the sale were applied to the outstanding balance on the Trailer Schedule. Nonetheless, as of April 18, 2025, the amount immediately due and payable pursuant to the Trailer Schedule, exclusive of FCL's costs, expenses and recoverable attorneys' fees incurred, is $13,372.17. Ex. A, Aff. of Stefano Benvenuti, ¶ 33.

**The Swather Lease**

26.    On or about August 9, 2019, Good Forage entered into a commercial equipment lease agreement with FCL, as evidenced by that certain Commercial Equipment Lease Agreement dated August 9, 2019, identified as contract number 001-0105560-000, executed and delivered by Good Forage in favor of FCL (the "Swather Lease"), for the purpose of leasing a 2019 Massey Ferguson self-propelled Windrower/Swather, model number WR9980, serial number M99800KHS14165 (the "Swather"), pursuant to the terms and conditions as more specifically identified therein. Ex. H, Swather Lease; Ex. A, Aff. of Stefano Benvenuti, ¶ 34.[1]

27.    Pursuant to Paragraph 12 of the Swather Lease, Good Forage shall be in default of the Swather Lease if, among other things, it (1) fails to pay when do any rent or other amount required to be paid; (2) fails to perform any other provisions under the Swather Lease or violate any of the covenants or representations made; or (3) default under any other agreement between Good Forage and FCL or under any material

---

[1] The Swather Lease was executed by Good Forage and Wesley Wittman, but this Motion only pertains to Good Forage.

obligation to a third party for borrowed money or deferred purchase price of property. Ex. H, Swather Lease, ¶ 12; Ex. A, Aff. of Stefano Benvenuti, ¶ 35.

28.     Paragraph 13 of the Swather Lease further provides that upon a default, FCL shall have the right, in its sole discretion, to exercise its remedies, which include but are not limited to: (1) recovering from Good Forage all rent and other amounts then due and to become due hereunder; (2) recovering from Good Forage all of FCL's costs and expenses (including legal expenses and attorneys' fees) in enforcing the Swather Lease; and (3) availing itself to any other remedy available at law or in equity. Ex. H, Swather Lease, ¶ 13; Ex. A, Aff. of Stefano Benvenuti, ¶ 36.

29.     Pursuant to the Swather Lease, Good Forage agreed to make 20 consecutive quarterly rental payments of $6,799.35 commencing in September 2019. Ex H, Swather Lease, p. 1; Ex. A, Aff. of Stefano Benvenuti, ¶ 37.

30.     Good Forage failed to adhere to its payment obligations pursuant to the Swather Lease. Specifically, Good Forage failed to remit a $6,799.35 quarterly rental payment due in February of 2023 and it has failed to make any subsequent payments. Ex. A, Aff. of Stefano Benvenuti, ¶ 38.

31.     As of April 18, 2025, the amount immediately due and payable pursuant to the Swather Lease, exclusive of FCL's costs, expenses and recoverable attorneys' fees incurred, is $205,102.57. Ex. A, Aff. of Stefano Benvenuti, ¶ 39.

**Initiation of Lawsuit**

32.     On December 22, 2023, FCL filed a Complaint asserting six claims for relief

9

against Good Forage:[2] (1) breach of contract related to Good Forage's breaches of the Baler Lease and the Master Lease and its related schedules, including the Shredder Schedule, Stacker Schedule, and Trailer Schedule; (2) breach of contract related to Good Forage's breaches of the Swather Lease; (3) unjust enrichment; (4) conversion; (5) civil theft; and (6) replevin. [Doc No. 1]. This Motion seeks default judgment against Good Forage and in favor of FCL on FCL's two breach of contract claims against Good Forage.[3]

33. Defendant Clay Good is the owner of Good Forage. Exhibit B, C. Good's Answer, ¶ 2.

34. On January 25, 2024, Clayton Good, on behalf of Good Forage, executed a Waiver of Service of Summons, acknowledging receipt of the underlying summons and Complaint. See Ex. I, Waiver of Service of Summons; Ex. A, Aff. of Stefano Benvenuti, ¶ 41. In addition, Mr. Good, on behalf of Good Forage, acknowledged that Good Forage "must file and serve an answer or motion under Rule 12 within 60 days from 01/25/2024, the date when this request was sent . . . . If I fail to do so, a default judgment will be entered against me or the entity I represent." Ex. I, Waiver of Service of Summons.

35. As such, the deadline for Good Forage to answer or otherwise respond to the Complaint was March 25, 2024.

---

[2] Most of these claims were also asserted against other defendants, but the claims against the non-Good Forage defendants are not subject to this Motion.
[3] If default judgment is granted against Good Forage on FCL's two breach of contract claims, then upon such entry of default judgment FCL intends to seek dismissal of its remaining claims against Good Forage, which is why it is not seeking default judgment on those claims as part of this Motion.

36. On March 25, 2024, the Court held a hearing at which the Court instructed the Clerk of this Court to enter a Clerk's Entry of Default against Good Forage due to its failure to appear and answer the Complaint. *See* Courtroom Minutes/Minute Order from March 11, 2024 [Doc. No. 32].

37. As a result, on March 25, 2024, the Clerk of this Court entered a Clerk's entry of default against Good Forage. [Doc. No. 35].

## ARGUMENT

**I. Default judgment against Good Forage should be entered as all of the requirements of Fed. R. Civ. P. 55(b) and D.C.COLO.LCivR 55.1 are satisfied.**

Rule 55(b) of the Federal Rules of Civil Procedure permits the entry of default judgment against any defendant who has defaulted for not appearing and answering the complaint. Default judgment may be entered either by the Clerk of the Court or the Court. Pursuant to Fed. R. Civ. P. 55(b)(1), the Clerk of Court may enter the default judgment if "plaintiff's claim is for a sum certain or a sum that can be made certain by computation" and the defendant is "neither a minor nor an incompetent person." Pursuant to Fed. R. Civ. P. 55(b)(2), in all other cases, the plaintiff must seek a default judgment from the Court. As set forth below, FCL is seeking a default judgment against Good Forage that is a sum certain or a sum that can be made by computation and, thus, the Clerk of the Court may enter the default judgment pursuant to Fed. R. Civ. P. 55(b)(1).

D.C.COLO.LCivR 55.1(a) provides that in order to obtain a default judgment pursuant to Fed. R. Civ. P. 55(b)(1), the following requirements must be met:

(1) that the defendant who has been defaulted:

11

(A) is not a minor or an incompetent person;

(B) is not in the military service, as set forth in the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, Protection of Servicemembers Against Default Judgments;

(C) has not made an appearance; and

(2) the sum certain or the sum that can be made certain by computation.

As discussed more fully below, all of the requirements of Fed. R. Civ. P. 55(b)(1) and D.COLO.LCivR 55.1(a) are satisfied and, therefore, FCL is entitled to a default judgment against Good Forage.

### A. Good Forage has been defaulted for failing to appear and answer the Complaint.

Pursuant to Fed. R. Civ. P. 55(a), a party is in default if it "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Good Forage was properly served in this case. Ex. A, Aff. of Stefano Benvenuti, ¶ 41; Ex. I, Waiver of Service of Summons. On March 25, 2024, the Court held a hearing at which the Court instructed the Clerk of this Court to enter a Clerk's Entry of Default against Good Forage due to its failure to appear and answer the Complaint. *See* Courtroom Minutes/Minute Order from March 25, 2024 [Doc. No. 32]. As a result, on March 25, 2024, the Clerk of this Court entered a Clerk's entry of default against Good Forage. [Doc. No. 35]

1. **Good Forage is not a minor or an incompetent person, nor is it in the military service, as set forth in the Servicemembers Civil Relief Act, 50 U.S.C., § Protection of Servicemembers Against Default Judgments.**

12

Good Forage is a Colorado limited liability company and therefore cannot be minor, incompetent person, or in military service. Ex. A, Aff. of Stefano Benvenuti, ¶ 5; Ex. K, Colorado Secretary of State - Summary.

### 2. Good Forage has not made an appearance.

As set forth above, Good Forage has not filed an answer to the Complaint, nor has it made an appearance, which is why the Court previously directed the Clerk to enter a Clerk's entry of default against Good Forage.

### B. FCL is seeking a judgment against Good Forage in a sum certain or a sum that can be made certain by computation.

FCL is entitled to a judgment on each claim it has asserted against Good Forage. As to monetary damages on its claim for breach of contract, FCL's damages are comprised of the following:

- $156,463.84 for Count I to Good Forage's breaches of the Baler Lease and the Master Lease and its related schedules, including the Shredder Schedule, Stacker Schedule, and Trailer Schedule; and

- $205,102.57 for Count II related to Good Forage's breaches of the Swather Lease.

*See* Ex. J, Damages Breakdown; Ex. A, Aff. of Stefano Benvenuti, ¶¶ 10, 17, 29, 33, 39, 42; *see also AGCO Fin., LLC v. Littrell*, No. 16-CV-4105 (WMW/FLN), 2017 WL 7369877, *3-4 (D. Minn. Dec. 15, 2017) (finding damages arising from breach of contract related to picker and cart rental were established for default judgment where affidavits and exhibits supported the computation).

In addition, pursuant to the terms of the Baler Lease and the Master Lease and

13

related schedules, FCL is entitled to its attorneys' fees and costs incurred in connection with enforcing its rights against Good Forage and the other defendants under those leases. Ex. A, Aff. of Stefano Benvenuti, ¶¶ 13, 19, 36. Should FCL prevail on this Motion, FCL intends to file a separate motion for attorneys' fees and application for costs pursuant to Federal Rule of Civil Procedure 54(b) and (d) and will request that the judgment be amended to include those fees and costs. FCL also requests the Court extend the deadline for it to file its fees and costs motion with respect to Good Forage until 21 days after all claims against the other Defendants are resolved, for the purposes of efficiency, given that FCL's fees and costs related to its claims against the other Defendants continue to accumulate, and FCL is entitled to recover those fees from Good Forage as well. *See* Ex. C, Baler Lease, ¶ 13 (permitting FCL to recover from Lessee "all" attorneys' fees and costs incurred in enforcing the lease); Ex. D, Master Lease, ¶ 28 (permitting FCL to recover from Lessee all reasonable attorneys' fees incurred by reason of any default of Lessee); Ex. H, Swather Lease, ¶ 13 (permitting FCL to recover from Good Forage all reasonable attorneys' fees incurred in enforcing the lease); *see also Country Inns & Suites by Carlson, Inc. v. Praestans One, L.L.C.*, No. CIV. 13-3381 PJS/LIB, 2014 WL 7408397 (D. Minn. Dec. 30, 2014) (holding primary obligor liable for all of plaintiff's attorneys' fees, including those incurred by plaintiff from litigating with guarantors after an entry of default had been entered against the primary obligor); *Huntington Nat'l Bank v. All. Acceptance Corp.*, No. CV 21-2059 (DWF/TNL), 2022 WL 1078527 (D. Minn. Apr. 11, 2022) (holding debtor liable for all of creditors' attorneys' fees, apparently including those involving claims against guarantors).

14

FCL also requests that the judgment reflect its entitlement to post judgment interest at a rate of 3.97 percent per annum, from the date of the judgment until the judgment is satisfied in full, pursuant to 28 U.S.C.A. § 1961.

## CONCLUSION

FCL has demonstrated its right to default judgment against Defendant Good Forage. FCL requests this Motion be granted and the Clerk, pursuant to Fed. R. Civ. P. 55(b)(1), or the Court, pursuant to Fed. R. Civ. P. 55(b)(2), enter default judgment on FCL's Count I and Count II against Good Forage, awarding $361,566.41 in total damages, plus post-judgment interest accruing from the date of the judgment at a rate of 3.97 percent per annum.

Respectfully submitted this 25th day of April, 2025.

*s/ Zane A. Gilmer*
Zane A. Gilmer
Ryan M. Sugden
**STINSON LLP**
1144 Fifteenth Street, Suite 2400
Denver, CO 80202
Phone: 303.376.8416
Emails: zane.gilmer@stinson.com
ryan.sugden@stinson.com

Benjamin J. Court
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Phone: 612.335.1615
Email: benjamin.court@stinson.com

*Attorneys for Plaintiff Farm Credit Leasing Services Corporation*

CORE/3009126.0396/197786126.5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 25, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. The undersigned hereby also certifies that on April 25, 2025, a copy of this document was mailed to Pro Se Defendant Clayton A. Good at the address below:

> Clayton A. Good
> 25498 County Road 66
> Greeley, CO 80631

*s/ Zane A. Gilmer*
Zane A. Gilmer

CORE/3009126.0396/197786126.5